## MARY POSCH v. LION BONDING & SURETY COMPANY.[1]

### June 8, 1917.

### Nos. 20,365—(87).

**Intoxicating liquor — saloon bond — action against surety alone.**

1. If the liability of a saloonkeeper and the surety on his license bond is joint and several, as it probably is, the surety may be sued alone. If the liability is joint, and the action is brought against the surety alone, it is simply a nonjoinder of a party defendant, and must be taken advantage of by demurrer or answer or it is waived.

**Same — execution by agent.**

2. The bond in this case was executed in the name of and on behalf of defendant by an agent who had authority to so execute it, and is the bond of defendant.

**Intoxicating liquor proximate cause of death.**

3. The evidence sustains the finding of the jury that the proximate cause of death of plaintiff's husband was intoxication produced by liquor sold him by the saloonkeeper.

**Sale in violation of statute.**

4. The sale was in violation of the statute and the terms of the bond,

[1]Reported in 163 N. W. 131.

in that it was made on Sunday, made to an habitual drunkard, and to an intoxicated person.

**Same.**

5. A sale to an habitual drunkard was a violation of the statutes and of the terms of the bond, and may form the basis of liability on the part of the surety, although no written notice had been given the saloon-keeper.

**Same.**

6. The fact that the sale was made on Sunday makes it unlawful and a violation of the bond. Liability ensues if the sale was the proximate cause of damage.

**New trial — misconduct of counsel.**

7. There was no misconduct of counsel sufficient to warrant a new trial.

**Damages.**

8. The damages are not excessive.

**Charge to jury.**

9. There was no prejudicial error in the inadvertent use of certain language in the charge.

Action in the district court for Morrison county to recover $2,000 for the death of plaintiff's husband. The answer denied that Frank A. Posch came to his death through any act, neglect or violation of Nick Schwientek. The case was tried before Parsons, J., who when plaintiff rested denied defendant's motion to dismiss the action, at the close of the testimony denied motions for directed verdicts, and a jury which returned a verdict for the amount demanded and answered in the affirmative the following questions: (1) Was Frank Posch an habitual drunkard on October 10, 1915? (2) if Nick Schwientek or his bartender Pollock sold intoxicating liquor to Frank Posch on October 10, 1915, was Frank Posch intoxicated when such liquor was sold to him? From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Ware & Junell,* for appellant.

*D. M. Cameron,* for respondent.

BUNN, J.

Defendant is the surety on the liquor license bond of Nick Schwien-

tek, who between November 12, 1914, and November 12, 1915, operated a saloon at Opole, a village in Stearns county. This action was brought by the widow of Frank Posch to recover on the bond for her husband's death alleged to have been caused by liquor sold him in violation of law by Schwientek. The action is against the surety alone, the principal not having been joined as a defendant. There was a verdict in favor of plaintiff in the sum of $2,000, the full penalty of the bond. Defendant appeals from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

Two points made by defendant on this appeal may be disposed of before considering the case on its merits.

1. It is insisted first that the action cannot be maintained against the surety alone. Counsel do not agree with our decisions holding that the injured party may bring suit on a liquor license bond, but concede, as they must, that we have so decided and do not ask us to overrule Lynch v. Brennan, 131 Minn. 136, 154 N. W. 795, L.R.A. 1916E, 269 and Koski v. Pakkala, 121 Minn. 450, 141 N. W. 793, 47 L.R.A.(N.S.) 183. They accuse the court of judicial legislation, and implore us not to add to this offense by ruling that the injured party may sue the surety without joining the principal. Of course the surety is not liable unless the principal is. If the liability is joint and several, it is plain that the surety may be sued alone. This is probably the nature of the liability, but conceding that it is not and that the liability is joint, what is the result? Simply the nonjoinder of a party defendant. The defendant did not demur to the complaint on this ground, nor raise the point in his answer. It was waived.

2. The second of the points mentioned is that the bond was executed in the name of defendant by an agent who was without authority from it to execute bonds of this character. The instrument was executed in defendant's name and sealed with its seal. This *prima facie* case was attempted to be rebutted by the introduction in evidence of the power of attorney given by defendant to the agent whose authority is in question. Among other bonds which, by this instrument, he was authorized to execute on behalf of defendant were "any and all municipal license and permit bonds." Defendant seems to concede that this would confer authority to execute liquor license bonds where the license is granted

by a city. In the present case the license was granted and issued by the county board, and the claim is that the power of attorney does not cover a license so issued. We do not construe the words "municipal license bonds" so narrowly. We perceive no reason why defendant. should permit an agent to execute a liquor license bond in one case and not in the other. The word "municipal" is not always used in the limited sense of applying to cities, towns or villages. It has a broader meaning, and we think it was intended to have this broader meaning as used in the power of attorney. We hold that the *prima facie* case made by the bond itself was strengthened rather than rebutted by the power of attorney, and that there is no merit in the contention of defendant.

The statement of facts which follows should be sufficient to an understanding of the questions involved below and on this appeal. Frank Posch was a farmer who helped in the farm work and did work for others when he was not drunk. On Sunday, October 10, 1915, at about 1:30 p. m. he left his home for the saloon of Schwientek, some three miles distant, and never returned alive. The evidence is undisputed that on his arrival in the saloon he was sober, but it is fairly clear that he did his best, with the able assistance of the bartender, to overcome this obstacle to a happy Sunday afternoon. He took four or five drinks of brandy or whiskey, probably the former, purchased a pint of the same liquor and left the saloon. He visited a store in the village where, with a little help, he consumed the pint. He then, in company with two friends, returned to the saloon. At this time he was admittedly "talking loud" and "feeling happy." He took five or six more drinks in rapid succession, and then bought another pint bottle. The evidence is quite persuasive that Posch was pretty well intoxicated at the time of this last purchase. He left the saloon alone. This was late in the afternoon and it was growing dark. Shortly after this he was seen lying in a ditch by the roadside some 80 rods from the saloon. He was asleep. In the early evening the people in front of whose place Posch was lying made an unsuccessful effort to rouse him; he was lying on his face, and they apparently succeeded in partly turning him, after which they left him for the night. In the morning Posch was found still lying in the ditch, but dead. The coroner was notified and arrived during the forenoon. He testified that Posch was lying with his face

down in the ditch, his mouth was in the mud, and some mud in his mouth. The coroner, who was a physician of long experience, gave his opinion that the immediate cause of death was suffocation from his mouth lying in the mud or dirt of the ditch. The bottle was found in a pocket, the contents half consumed.

3. Perhaps the chief contention of defendant on these facts is that the death of Posch was not proximately caused by the liquor sold him by Schwientek. This question was carefully and correctly submitted to the jury, and we find no difficulty in holding that the evidence warranted its submission and fully justified a finding that intoxication due to the liquor sold Posch at Schwientek's saloon was the proximate cause of his death. Defendant claimed on the trial that Posch had received an injury some days before, and sought to have the jury infer some connection between this injury and the death, but certainly the evidence on this point fell far short of being conclusive. On the contrary, we are satisfied that but for his intoxication on this afternoon Posch would not have selected the bottom of a ditch for his bed, and would have lived until his drinking habits caused his death in some other way.

4. There is no doubt at all that Schwientek, through his bartender, violated the law in selling the liquor to Posch. In the first place, it was Sunday. Secondly, the evidence leaves no doubt that Posch was an habitual drunkard. The testimony introduced by plaintiff sufficiently proved this, and defendant, in its effort to prove that plaintiff did not lose much by her husband's death, succeeded in making the case conclusive on this point. In the third place, as we have before said, the evidence abundantly justified the jury in finding that Posch was intoxicated when the last liquor was sold him, if not when he came into the saloon the second time. The jury found by answers to special questions that Posch was an habitual drunkard and that he was intoxicated when the liquor was sold him.

5. It is urged that defendant's liability cannot be based upon the fact that Posch was an habitual drunkard. It is probably unnecessary to decide this point, as violations of the terms of the bond and of the statutes are found in the sale to an intoxicated person and in the sale on Sunday. But the statute (G. S. 1913, § 3117), provides that the liquor license bond shall be conditioned that the saloonkeeper shall not

sell liquor to an habitual drunkard. The contention is that this language should be construed in the light of section 3116, which provides that the bond shall be conditioned that the saloonkeeper shall not sell liquor "at any time when the sale of such liquor is forbidden by law, nor *to any person to whom such* sale is so forbidden." A sale to an habitual drunkard is made a criminal offense by section 3148 only after written notice is given the saloonkeeper. The bond in this case is conditioned as required by section 3117, and provides that the saloonkeeper shall not sell to an habitual drunkard. We do not sustain defendant's claim that the clause of the bond as to sales "within one year after written notice" applies to sales to an habitual drunkard.

6. Defendant argues that the fact that the liquor was sold on Sunday, rather than on a week day, cannot be considered the proximate cause of the death of Posch. This is correct enough in that the same result might have followed a legal sale, but the argument leads nowhere. Had it been a legal sale, no liability would have followed, whatever the proximate result, but, being illegal, the saloonkeeper and his surety are liable for the result. It was the illegality of the sale that made the act a violation of the bond, but it was the sale itself that was the proximate cause of the death. The argument confuses the question of whether the act was wrongful and the question of proximate cause.

7. The claim of misconduct of plaintiff's counsel need not be discussed in detail. The trial court did not deem the conduct complained of sufficient to warrant a new trial, though subject to criticism. We concur.

8. While, as the trial court said, the jury would have been justified in finding Posch's life of little pecuniary value to plaintiff, owing to his apparently firmly fixed habit of getting drunk whenever he could obtain liquor, we do not feel justified in saying that the verdict is so large as to warrant our interference. He was a big, strong man, with a life expectancy of 26 or 27 years. He worked in the intervals when he was not under the influence of liquor, and, had he lived, we do not know how soon it would have been impossible for him to obtain the poison that made his life of so little value to anybody.

9. There is a claim of error in the charge that may justify mention. In defining what would constitute intoxication, the court said that if

Posch was furnished intoxicating liquor by Schwientek or his bartender, and if, at the time, he was so affected by *such* liquor taken into his system as to cause him to lose self-control, etc., "he was then intoxicated at the time that the liquor was furnished to him." The use of the word "such," construing that word to refer to the liquor then furnished Posch, makes the instruction an absurdity. It was plainly not so intended, and the use of the word was a mere inadvertence. We do not think, in view of the charge as a whole, that the jury could have been misled. Even granting that there was error here, and that defendant was not obliged to call the court's attention to the inadvertence at the time, there could be no prejudice in view of the amply sustained finding of the jury that Posch was an habitual drunkard, and the admitted fact that the sale was on Sunday.

Order affirmed.