**Connie HOLLERICH, individually, and as mother and natural guardian of Ryan Hollerich, Nicholas Hollerich and Nathan Hollerich, minor children, et al., Appellants,**

v.

**CITY OF GOOD THUNDER, Minnesota, et al., Respondents.**

No. CX–82–1483.

Supreme Court of Minnesota.

Dec. 2, 1983.

James R. Korman, Faribault, for appellants.

Mark J. Condon, Wayne D. Tritbough, Minneapolis, for respondents.

Stephen S. Eckman and Phillip C. Carruthers, Minneapolis, for Minnesota Trial Lawyers Association, amicus curiae.

SIMONETT, Justice.

We hold that a liquor vendor who sells intoxicating liquor after hours is, for purposes of the Civil Damages Act, "illegally selling" intoxicating liquor. We reverse the trial court's contrary ruling.

The facts as stipulated by the parties are as follows. Andrew Hollerich, age 23, at-

tended the Blue Earth County Fair the evening of August 15, 1979. He arrived at the municipal liquor store of the defendant-respondent City of Good Thunder about 11 p.m., had one mixed drink, and left after a half hour. Andrew gave his brother a ride home and then returned, about midnight, to the Good Thunder Municipal Liquor Store and had one more drink. Before leaving at 1 a.m., Andrew purchased a 12-pack of strong beer. Andrew then drove a friend home and drank one beer from the 12-pack in front of the friend's home. He then drove off, apparently headed for home, when, at about 1:30 a.m., he missed a curve in a road construction area, rolling the car and sustaining fatal injuries. Time of death was estimated to be 2:30 a.m. A blood sample taken at 8:30 a.m. showed a blood-alcohol content of .15. Andrew is survived by his wife, Connie, and three minor children, the plaintiff-appellants here, who bring this dramshop action against the City of Good Thunder and its bartender (suits against other defendants have been settled).

Minn.Stat. § 340.14, subd. 1 (1982), provides: "No 'off-sale' shall be made before eight o'clock a.m. or after ten o'clock p.m. of any day." Consequently, it is conceded that the Good Thunder Municipal Liquor Store sold Andrew Hollerich the 12-pack of strong beer "after hours" in violation of the statute. The parties further stipulated that plaintiffs had no evidence to support a claim that the decedent was obviously intoxicated at any time prior to his accident. On this stipulation the trial court granted defendants summary judgment from which plaintiffs now appeal.

The issue before us, then, is this: Does an after-hours sale of packaged liquor satisfy the requirement of "illegally selling" for the purpose of the Civil Damages Act?

In 1979 the Civil Damages Act read as follows:

> Every * * * person who is injured * * by any intoxicated person, or by the intoxication of any person has a right of action * * * against any person who, by illegally selling or bartering intoxicating

liquors, caused the intoxication of such person * * *.

Minn.Stat. § 340.95 (1979) (emphasis added). Nowhere in the Act is the phrase "illegally selling" defined; consequently, one has to look elsewhere in chapter 340 for what is an illegal sale. Section 340.14, subd. 1, says that no "off-sale" shall be made after 10 p.m. Obviously, then, an after-hours sale is "illegal"; indeed, it is a misdemeanor, Minn.Stat. § 340.19, subd. 6 (1983). But is it illegal for purposes of the Civil Damages Act? Although the Act has been in existence in basically the same form since 1911, see 1911 Minn. Laws ch. 175 at 221 (codified at Minn.Gen.Stat. § 3200 (1913)), this court has never directly decided this question.

The parties cite three of our cases bearing on the issue, *Posch v. Lion Bonding & Surety Co.,* 137 Minn. 169, 163 N.W. 131 (1917); *Fest v. Olson,* 138 Minn. 31, 163 N.W. 798 (1917); and *Hartwig v. The Loyal Order of Moose, Brainerd Lodge No. 1246,* 253 Minn. 347, 91 N.W.2d 794 (1958). *Posch,* involving a Sunday sale, is a suit on the vendor's bond and is not in point. *Fest,* however, holds that a Sunday sale is an illegal sale for purposes of the Dramshop Act. *Hartwig,* the most recent case, contains dictum that an after-hours sale might be an "illegal" dramshop sale, but, since the court found there was insufficient evidence of an after-hours or Sunday sale, the significance, if any, of the dictum is obscure. To the extent precedent is of help, we think it is of some significance that in *Fest* we held a Sunday sale to be an illegal dramshop sale because the prohibition against Sunday sales appears in the very same statute as the after-hours prohibition.

The position taken by the respondent City of Good Thunder is that the phrase "illegally selling" refers only to those sections in chapter 340 that prohibit sales to certain persons and that the phrase does not refer to those sections that prohibit sales at certain times and places. The respondent city believes such a legislative intent is discernible from the statutory scheme of chapter 340 and from the legislative history of sec-

tion 340.95, the Dramshop Act, within the overall context of chapter 340. To bolster this position, the city further argues that public policy is best served by not imposing dramshop liability on a vendor for an after-hours sale of intoxicating liquor to a sober or ostensibly sober adult customer.

The Dramshop Act gives a right of action against any person who "by illegally selling * * * intoxicating liquors, caused the intoxication of such person." While this statutory phrase surely contemplates a sale *to someone,* the statutory language does not seem to restrict illegality of the sale to certain categories of purchasers. Nevertheless, respondent city argues the Act refers only to sections 340.73 and 340.14, subd. 1a, which prohibit sales to minors, persons obviously intoxicated, and persons for whom the vendor has received notice not to serve.

Minn.Stat. § 340.73 (1982), entitled "Persons to Whom Sales are Illegal," prohibits sales to minors, obviously intoxicated persons, and persons who have been posted (plus, at the time here involved, public prostitutes). On the other hand, Minn.Stat. § 340.14 is entitled "Regulations." Subdivision 1, entitled "Hours and days of sale," sets out in detail the days and times intoxicating liquors may not be sold. Subdivision 3 is entitled "Sales; where forbidden," and prohibits the sale of intoxicating liquors at eight different locations, such as within the capitol, upon the state fairgrounds, and, with some qualifications, within 1500 feet of any state university. In 1971 a new subdivision was added, subdivision 1a, entitled "Persons denied access," which prohib-

its a sale "to any minor or to any person obviously intoxicated or to any of the persons to whom sale is prohibited by statute." Respondent city argues that the language "or to any of the persons to whom sale is prohibited by statute," which is in subdivision 1a of section 340.14, is a clear reference over to section 340.73. From this the city argues that the provisions of section 340.14 were enacted only as regulations for the liquor industry and were not intended to define what is an illegal sale under section 340.95. "The tenor of 340.95, 340.73 and 340.14(1a) all indicate," argues the city, "that the selling or bartering intended to be covered by the Dram Shop Act, 340.95, concerns only those sales to those persons mentioned in 340.73."

From our reading of the pertinent statutes and of the legislative history, we cannot ascertain any legislative intent to limit illegal sales for dramshop purposes to those sales described in section 340.73 and to exclude the first two subdivisions of section 340.14.[1] Both sections 340.73 and 340.14 regulate the conduct of liquor vendors. To prohibit sales on certain days and at certain times to anyone is surely no less regulatory in nature than prohibiting sales to a person with a particular status or condition.

■ As an aid to construing the statutory language and in ascertaining legislative intent, it is appropriate to consider the purpose of the Dramshop Act. Civil damage acts "although penal in nature, are also remedial in character and, according to the

---

1. For example, when section 340.14 was enacted in 1933 (1933 Minn.Ex.Sess.Laws ch. 46), subdivision 1 thereof contained a prohibition against sales to obviously intoxicated persons and minors, as well as a prohibition against after-hours sales. In 1955, in *Strand v. Village of Watson,* 245 Minn. 414, 72 N.W.2d 609 (1955), this court held that the prohibition against sales to "obviously intoxicated" persons in section 340.14, subd. 1, took precedence over sales to "intoxicated" persons in section 340.73 for dramshop purposes. In 1967, the provisions against sales to obviously intoxicated persons and minors was deleted from section 340.14, subd. 1. *See* Act of February 24, 1967, ch. 19, § 10, 1967 Minn. Laws 54, 72. Consequently, from 1967 to 1971, the "intoxi-

cated persons" standard of section 340.73 governed, and this standard was construed to require the bartender to take affirmative action to determine if a patron was intoxicated. *Mjos v. Village of Howard Lake,* 287 Minn. 427, 178 N.W.2d 862 (1970). Apparently in response to this situation, the legislature, in 1971, reenacted the prohibition of sales to "obviously intoxicated persons" and minors as part of section 340.14, but made it a new subdivision, subdivision 1a. Act of May 13, 1971, ch. 264, § 1, 1971 Minn. Laws 476, 477. The intoxicated persons standard of section 340.73 remained unchanged until 1983. *See* Act of Mar. 22, 1982, ch. 528, § 5, 1982 Minn.Laws 973, 978 (adopting the "obviously intoxicated" language).

prevailing view, are to be liberally construed *so as to suppress the mischief and advance the remedy.*" *Hahn v. City of Ortonville,* 238 Minn. 428, 436, 57 N.W.2d 254, 261 (1953) (emphasis in the original). The mischief, of course, consists of the social ills resulting from intoxication. *See, e.g., Lund v. Village of Watson,* 260 Minn. 273, 281, 109 N.W.2d 564, 570 (1961). Through strict liability sanctions and by placing the burden of economic loss on the vendors, the Act "provides an extremely effective incentive for liquor vendors to do everything in their power to avoid making illegal sales." *Skaja v. Andrews Hotel Co.,* 281 Minn. 417, 423, 161 N.W.2d 657, 661 (1968). At the same time, the remedy advanced by the Act is "to compensate members of the public who are injured as a result of illegal liquor sales." *Id.* at 422, 161 N.W.2d at 661.

▇ The respondent city argues that section 340.14, subd. 1, is directed only at certain extrinsic restrictions of a sale, such things as the day of the week or the time of the day. These restrictions, while of public concern, are not, argues the city, the concern of the Civil Damages Act. We are not persuaded by this argument. The concern of the Civil Damages Act is intoxication which results in injury to the intoxicated person's dependents or others. The prohibition of after-hour sales tends to reduce liquor consumption late at night or in early morning hours, at times when the likelihood of overindulgence and the resultant hazards with which the Act is concerned is enhanced. In other words, we believe the prohibition against after-hour sales is sufficiently related to the purposes of the Dramshop Act so that such sales by a vendor constitute "illegally selling" within the meaning of the Act.

It may be, as the respondent city argues, that there is little, if any, difference in risk of injury to dramshop claimants between the legal sale of a 12-pack during business hours and a sale after hours. It may also seem incongruous for the liquor laws to prohibit an off-sale of packaged liquor after 10 p.m. while permitting the same patron to continue his on-sale drinking at the bar until 1 a.m. These arguments, however, are no different than inquiring why a sale to an 18-year-old is illegal when a sale to a 19-year-old is not. To argue that the legislature, which must make policy judgments on how to handle excessive liquor consumption, should have defined illegal sales differently does not detract from the illegality of the sales it has defined.

▇ There does seem, however, to be a difference between imposing dramshop liability on a bartender who serves a minor or an obviously intoxicated person, and a bartender who sells intoxicating liquors, especially in a packaged "off-sale," to an adult customer who is sober or ostensibly sober. In either case, the sale is illegal, yet the after-hours sale, on the face of it, seems less likely to result in the mischief at which the Civil Damages Act is directed. What must be remembered, however, is that more than an illegal sale is required for dramshop liability. In addition, a claimant must, first, establish that the illegal sale contributed to the intoxication, and, second, that the intoxication contributed to cause the injury. As to the first causation issue, a scrutiny of all the surrounding circumstances must show "a practical and substantial relationship" between the illegal sale and intoxication. *Kvanli v. Village of Watson,* 272 Minn. 481, 484, 139 N.W.2d 275, 277 (1965). These distinctions are important. As this court said in *Posch v. Lion Bonding & Surety Co.,* 137 Minn. 169, 174, 163 N.W. 131, 133 (1917) (suit on the vendor's bond):

> Defendant argues that the fact that the liquor was sold on Sunday, rather than on a week day, cannot be considered the proximate cause of the death of Posch. * * * It was the illegality of the sale that made the act a violation of the bond, but it was the sale itself that was the proximate cause of the death. The argument confuses the question of whether the act was wrongful and the question of proximate cause.

In this case we are dealing only with the question of whether the act—the after-hours sale—was wrongful. Whether, on

the first causation issue, the illegal sale comes within "the ambit of the seller's responsibility" under the *Kvanli* test is a separate issue not before us and is a different hurdle for plaintiffs to overcome.[2]  We hold that an after-hours sale, in violation of Minn.Stat. § 340.14, subd. 1 (1982), is an illegal sale and constitutes illegally selling intoxicating liquor for the purpose of the Civil Damages Act.

Only the issue of an after-hours sale is presented and decided here.  We do not, for example, reach the question of whether a violation of the geographical restrictions of subdivision 2 of section 340.14 or any of the sections concerning licensing, bonding and taxation would constitute an "illegal sale."  Chapter 340 contains a variety of prohibitions, each in its own context, each with its own purpose and legislative history.  Whether a dramshop action exists for other "illegal sales" would require consideration by us in the concrete setting of an actual case.

Reversed.

---

**2.**  It can be argued that what makes an after-hours sale "illegal" for dramshop purposes is not so much the violation of section 340.14, subd. 1, but "a practical and substantial relationship between (a) the circumstances making the sale illegal, and (b) the circumstances accounting for the consumption of the liquor by the one whose intoxication caused damage." *Kvanli v. Village of Watson*, 272 Minn. 481, 484, 139 N.W.2d 275, 277 (1965) (where pertinent circumstances included what the bartender knew or should have known about who would consume the purchased liquor and the time lapse between the illegal sale and consumption).  It seems to us, however, that in defining an "illegal sale" for dramshop purposes, it makes for clearer analysis to discuss the circumstances surrounding the sale and consumption as bearing on the causation factor rather than on "illegality."