K.R., Respondent,

v.

Brandon SANFORD, et al., Defendants,

The Committee, Inc., d/b/a First Avenue & 7th St. Entry, petitioner, Appellant.

No. C2–98–1377.

Supreme Court of Minnesota.

Feb. 3, 2000.

Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Paul A. Banker, Bassford, Lockhart, Truesdell, & Briggs, P.A., Minneapolis, for appellant.

Messerli & Kramer, P.A., James C. Wicka, Susan M. Coler, Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

In this appeal from summary judgment, we review the legal issue of whether a plaintiff, allegedly complicit in the illegal sale of alcohol, is barred from suit under the Civil Damages Act (CDA or Damages Act),[1] or whether such complicity is fault to be compared under the Comparative Fault Act (CFA).[2] We hold that the complicity of a plaintiff in the illegal sale of alcohol does not bar plaintiff's suit for damages under the CDA but, rather, such complicity is a fault to be compared and apportioned under the CFA.

1. In relevant part, the Damages Act reads:
 Subdivision 1. A spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages. * * *
 * * * *
 Subd. 3. Actions under this section are governed by [the Comparative Fault Act]. Minn.Stat. § 340A.801 (1998).

2. The Comparative Fault Act provides:

Respondent K.R. filed suit under the Damages Act against appellant, The Committee, Inc. (The Committee),[3] alleging that she was sexually assaulted and injured by three intoxicated defendants, Sergio Vargas, Brandon Sanford, and Douglas Schneider, and that The Committee caused their intoxication by illegally selling alcoholic beverages to Vargas. The sale allegedly violated Minn.Stat. § 340A.504, subd. 4(4) (1998), which prohibits both after hour sales and the sale of alcoholic beverages for off-premises consumption unless the vendor has an off-sale license.

The district court granted The Committee's motion for summary judgment, concluding that K.R. did not have standing to bring the lawsuit against The Committee because of her complicity in the illegal sale of the alcohol. The court of appeals concluded that the district court erred because, under the 1990 amendment to the CFA, complicity is now a comparative fault and not a bar to suit. See K.R. v. Sanford, 588 N.W.2d 545, 549 (Minn.App.1999). We affirm.

We review summary judgment to determine (1) if there are genuine issues of material fact and (2) if the district court erred in its application of the law. See Offerdahl v. University of Minn. Hosps. & Clinics, 426 N.W.2d 425, 427 (Minn.1988). When, as in this case, the issue is one of law involving statutory construction, our review is de novo. See Sorenson v. St. Paul Ramsey Med. Ctr., 457 N.W.2d 188,

Contributory fault does not bar recovery in an action by any person or the person's legal representative to recover damages for fault resulting in death, in injury to person or property, or in economic loss, if the contributory fault was not greater than the fault of the person against whom recovery is sought, but any damages allowed must be diminished in proportion to the amount of fault attributable to the person recovering. Minn.Stat. § 604.01, subd. 1 (1998).

3. The Committee owns and operates the downtown Minneapolis nightclub First Avenue where the alleged illegal sale took place.

190 (Minn.1990). We consider the evidence in a light most favorable to the nonmoving party, in this instance K.R. *See Fisher v. County of Rock,* 596 N.W.2d 646, 651 (Minn.1999).

After several months of working in security at First Avenue, K.R. began training as a bartender. First Avenue trained its bartenders to recognize signs of intoxication and to stop serving drinks after hours, but it was a regular practice for managers to sell employees and select customers closed bottles of alcohol after hours and for off-premises consumption in violation of Minn.Stat. § 340A.504, subd. 4(4).

At about midnight on December 21, 1996, while working at First Avenue, K.R. was approached by Vargas, a regular customer and former co-worker. Vargas asked K.R. to purchase for him a bottle of Absolut Kurrant Vodka and gave K.R. $20 for the purchase. Vargas offered K.R. a ride home in exchange for the favor.

At the end of her shift, at approximately 4 a.m., K.R. went to her manager, told him she needed a bottle of vodka "for Sergio" and gave her manager the $20 Vargas had given her for the purchase. Her manager later met her at one of the club's exits and gave her the bottle of vodka. She phoned Vargas and requested the ride home that he had promised and at approximately 5 a.m. Vargas arrived at the club, accompanied by Sanford and Schneider. After stopping briefly at a party, K.R., Vargas, Sanford and Schneider went to Sanford's apartment. K.R. was told they were stopping for a quick drink before taking her home. Using the liquor Vargas purchased through K.R., Vargas and Schneider made vodka and grape juice drinks for themselves. K.R. mixed a drink with one shot of vodka and grape juice for herself. Both Vargas and K.R. inhaled a small line of cocaine.

Vargas and Schneider each mixed and consumed at least two more drinks. By 7 a.m., Vargas appeared intoxicated and K.R. became concerned that he was too intoxicated to drive. Approximately an hour later, the three men went into another room and returned a few minutes later. Vargas told K.R. that they were going to "crash" at the apartment. He then offered her a "ruffie" (a street name for the drug Rohypnol). He told her it would help her sleep and that each of the men had already taken a pill. After taking the pill, K.R.'s perception became blurred and she began to experience, in her words, a "dream-like state," with moments of lucidity. She remembers coming to and seeing the three men sexually assaulting her.

■ We turn now to the legal issue of whether a plaintiff's complicity in the illegal sale of alcohol bars her suit under the Damages Act, as the district court ruled, or whether such complicity is fault to be compared under the Comparative Fault Act, as the court of appeals held. We first examine the relevant history of the CDA and the origin of the doctrine of complicity in our case law. In that context, we then construe the 1990 legislative amendment which added "the defense of complicity under section 340A.801" to the definition of "fault" under the CFA, Minn.Stat. § 604.01,[4] with particular focus on the origins of the amendment in recommendations to the legislature from the Minnesota Injury Compensation Study Commission. We then apply our analysis to the argu-

---

**4.** The relevant 1990 amendment is underscored below.

 Subd. 1a. "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an express consent or primary assumption of risk, misuse of a product and unreasonable failure to avoid an injury or to mitigate damages, *and the defense of complicity under section 340A.801.* Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault. Act of May 3, 1990, ch. 555, § 20, 1990 Minn. Laws 1564 (emphasis added).

ments of The Committee and the facts of this case.

■■■ At common law, no cause of action existed against a vendor for injuries resulting from the sale of intoxicating beverages. *See Koehnen v. Dufuor,* 590 N.W.2d 107, 109 (Minn.1999). In 1911, the Minnesota legislature first imposed liability on liquor vendors for injuries resulting from the illegal sale of alcoholic beverages. *See* Minn. Laws 1911, ch. 175, § 1 (codified as Minn.Stat. § 3200 (1913)).[5] Since then, we have consistently recognized that, because the legislature created the cause of action authorized by the CDA, the legislature is free to expand or reduce the rights provided by the CDA. *See Hollerich v. City of Good Thunder,* 340 N.W.2d 665, 668 (Minn.1983). Our role is to give effect to the language of the CDA when its meaning is plain, and when the language of the statute requires our interpretation, to ascertain and effectuate the intent of the legislature. *See* Minn.Stat. § 645.16 (1998).

Since our 1968 decision in *Turk v. Long Branch Saloon, Inc.,* we have consistently recognized and applied the doctrine of complicity to the CDA, barring recovery to a plaintiff injured by an intoxicated person when the plaintiff "participate[d] knowingly and affirmatively in the illegal sale" that contributed to the intoxication. 280 Minn. 438, 442, 159 N.W.2d 903, 906 (1968); *see also Martinson v. Monticello Mun. Liquors,* 297 Minn. 48, 56, 209 N.W.2d 902, 907 (1973); *Heveron v. Village of Belgrade,* 288 Minn. 395, 401, 181 N.W.2d 692, 695

(1970). In *Turk* we held that "the protection to the public afforded by [the CDA] was not intended by the legislature to be extended to persons who participate knowingly and affirmatively in the illegal sale * * * ." *Turk,* 280 Minn. at 442, 159 N.W.2d at 906.[6] We so held despite a previous determination that other forms of contributory negligence would not bar recovery under the CDA. *See, e.g., Beck v. Groe,* 245 Minn. 28, 36, 70 N.W.2d 886, 892 (1955).

In 1969, the Comparative Fault Act was enacted and comparative fault replaced the doctrine of contributory negligence in tort claims.[7] In 1977, the legislature amended the Damages Act to specifically reference the Comparative Fault Act:

Actions for damages based upon liability imposed by this section shall be governed by [the Comparative Fault Act]. The provisions of [the Comparative Fault Act], as applied under this section, however shall not be applicable to actions brought by a husband, wife, child, parent, guardian or other dependent of an intoxicated person.

Act of June 2, 1977, ch. 390, § 1, 1977 Minn. Laws 887. Then, in 1985, we were asked to decide whether the 1977 amendment eliminated complicity as a complete defense. *See Herrly v. Muzik,* 374 N.W.2d 275 (Minn.1985). We concluded that the legislature did not intend by the 1977 amendment to supplant our previous decisions holding that the Damages Act was intended solely to "protect innocent third persons." *Id.* at 278.[8]

---

**5.** Section 3200 later became Minn.Stat. § 340.95, which was repealed by Act of June 5, 1985, ch. 305, art. 13, § 1, 1985 Minn. Laws 1505, and replaced with § 340A.801 by Act of June 7, 1985, ch. 309, § 12, 1985 Minn. Laws 1546.

**6.** "Minnesota's policy against supplying liquor illegally is so strong that recovery will be allowed even though the damaged person, in respects unrelated to the intoxication, may have failed to exercise reasonable care for his own safety." *Turk,* 280 Minn. at 442, 159 N.W.2d at 906 (citation omitted).

**7.** *See* Act of May 23, 1969, ch. 624, § 1, 1969 Minn. Laws 1069 (codified as Minn.Stat. § 604.01 (1969)).

**8.** Our repeated view that the Civil Damages Act was intended solely to protect *"innocent third persons"* injured as a result of another's intoxication cannot have escaped the legislature's attention. Common sense thus leads us to conclude that had the legislature intended to enlarge the class of beneficiaries under the Act and overturn *Turk, Heveron* and *Martinson,* different language would have been employed in the amendment.

If our interpretation of the interplay between the Damages Act and the Comparative Fault Act had not come to the legislature's attention before *Herrly* was decided, it was certainly brought to the legislature's attention in 1990. In 1988, the legislature established the Minnesota Injury Compensation Study Commission. *See* Act of April 12, 1988, ch. 503, § 4, 1988 Minn. Laws 378. The Commission's goal was to evaluate the tort recovery system and make recommendations that would "perpetuate a fair and balanced approach to the sometimes incompatible goals of the tort system, accountability and compensation." Minnesota Injury Compensation Study Commission, *Report to the Legislature*, 4 (1990).

The Commission's first recommendation concerned the Comparative Fault Act. The Commission recommended that the definition of "fault" be amended in four ways, the last of which read, "[t]he defense of complicity in actions brought under the Civil Damages Act, section 340A.801, should no longer be a complete defense but should be subject to apportionment under section 604.01, the Comparative Fault Act." *Id.* at 5. The Commission identified the complicity doctrine, identified its origins in case law and explained why, in the view of the Commission members, the doctrine should not act as an absolute bar to recovery:

> [C]omplicity is difficult to distinguish from other facets of contributory negligence already subject to comparison under the Comparative Fault Act * * *. A claimant's conduct constituting secondary assumption of risk, misuse of a product, and an unreasonable failure to mitigate or avoid damages are all subject to comparison * * * as types of contributory negligence. Complicity fits more readily into this grouping of defenses than as a separate, complete bar to recovery in Civil Damages Act cases.

Commission Report at 33–34. The Commission submitted a proposed bill with its

*Herrly*, 374 N.W.2d at 278 (citation omitted).

report. *See id.* at A–1. While the legislature modified other sections of the bill, the proposed changes to the definition of "fault" were all adopted without amendment. *Compare id.* at 8 *with* Minn. Laws 1990, ch. 555 §§ 19–21. The term "fault" now includes "the defense of complicity under [the Damages Act]". Minn.Stat. § 604.01.

■ From the language of the 1990 amendment and its legislative history we conclude that the legislature intended to eliminate complicity as a complete defense to actions brought under the CDA and, instead, allow complicity to be a comparative fault. We now turn to the arguments of The Committee.

The Committee first argues that, notwithstanding the 1990 amendment, a person who illegally purchases alcohol lacks standing to bring suit under the CDA, citing *Cavin v. Smith*, 228 Minn. 322, 37 N.W.2d 368 (1949). Cavin, a minor assaulted by another patron while drinking in a bar, filed suit against the bar alleging that, because he was intoxicated, he was unable to defend himself. *See id.* at 323, 37 N.W.2d at 369. We held that "a minor patron * * * has no cause of action against the seller for damages sustained as the result of *his consumption* of liquor illegally sold to him." *Id.* (emphasis added). By contrast, K.R. does not allege, as did Cavin, that because she consumed alcohol, she could not defend herself from the assaults of others. Rather, she alleges that she was sexually assaulted by three men who were intoxicated from illegally purchased alcohol. To maintain an action under the CDA the plaintiff must have been injured "by an intoxicated person or by the intoxication of another person." Minn.Stat. § 340A.801, subd. 1. Cavin did not meet this threshold requirement, which formed the basis of his lack of standing and distinguishes that case from the case at bar.

The Committee next argues that in addition to not being complicit by "participat[ing] knowingly and affirmatively in the illegal sale," *Turk,* 280 Minn. at 442, 159 N.W.2d at 906, a plaintiff must also be an "innocent third party" to have standing under the Damages Act. The Committee cites our decision in *Lefto v. Hoggsbreath Enterprises, Inc.,* 581 N.W.2d 855 (Minn. 1998), and argues that the term "innocent third party" means an individual who did not contribute to the intoxication of the person who caused the injury.

The sole issue in *Lefto* was whether a plaintiff was required to have a legal relationship with the injured person in order to bring suit under the CDA. *See id.* at 856. In *Lefto,* there was no issue of complicity, much less any mention or discussion of the 1990 amendment to the Damages Act. There is no merit to The Committee's argument that our decision in *Lefto* answers definitively the issue in this case.

 We acknowledge, however, the need to clarify the term "innocent third party" as we have used it in cases involving the complicity doctrine. *See Herrly,* 374 N.W.2d at 278; *Martinson,* 297 Minn. 48 at 56, 209 N.W.2d 902 at 907 ("the acts of plaintiff in continuing to participate in furnishing intoxicating liquor to [his drinking companion] constitute *complicity which deprives plaintiff of standing as an innocent third party.*") (emphasis added). In *Herrly,* we explicitly defined an innocent third party as "one who has had nothing to do with the *illegal* furnishing of liquor to the intoxicated wrongdoer." 374 N.W.2d at 278 n. 2 (emphasis added). An analysis of our prior cases supports the definition in *Herrly,* which focuses on the illegality of the provision of alcohol.

In *Turk,* we held that "the protection to the public afforded by [the CDA] was not intended by the legislature to be extended to persons who participate knowingly and affirmatively *in the illegal sale, bartering, or gift of the intoxicating liquor.*" 280 Minn. at 442, 159 N.W.2d at 906 (emphasis added). We went on to describe someone who has been complicit as "one who has been an intentional accessory to the illegality." *Id.* Our decision turned not on the fact that the plaintiff caused someone to become intoxicated, but on the illegality of providing a minor with alcohol. Later in *Heveron,* we held that "[t]hose who voluntarily and affirmatively participate in inducing the intoxication of a person *in violation of § 340.73* [9] encounter the risk of nonliability of the licensed dealer * * *." 288 Minn. at 401, 181 N.W.2d at 695 (emphasis added).

Finally, in *Martinson,* we applied *Turk*'s holding to a situation where alcohol was provided to an obviously intoxicated person, which is illegal. *See* 297 Minn. at 55, 209 N.W.2d at 906. Again, in *Martinson,* it was not that the plaintiff had provided alcoholic beverages to his drinking companion in and of itself that constituted complicity. Rather, the plaintiff was complicit because he continued to provide alcoholic beverages once he knew or should have known that his companion was obviously intoxicated. *See id.* In each of these cases it was the illegality of the conduct, not the mere contribution to the intoxication, which led to the conclusion that the plaintiff was complicit.

From this review of the underlying facts of our previous cases, we conclude that the term "innocent third party," as used in our case law interpreting the complicity doctrine under the Damages Act, means a party not complicit in the specific illegal act. The term "innocent" as used in the term "innocent third party" does not refer to generic innocence in the sense of not

---

9. Section 340.73 prohibited providing alcohol to minors, obviously intoxicated persons, persons for whom the vendor had received notice not to serve, and, at one point in time, public prostitutes. *See Hollerich,* 340 N.W.2d at 667. The statute was repealed and replaced by Minn.Stat. §§ 340A.502 and 340A.503. *See* Act of June 5, 1985, ch. 305, art. 7, §§ 2 and 3, 1985 Minn. Laws 1491–92.

providing alcohol to one who ultimately causes damage.[10] Just as a liquor vendor is held responsible for those specific acts made illegal by the legislature, so also, a party is held responsible for complicity in specific illegal acts.

We conclude from the language of the 1990 amendment to the CDA and its legislative history that the legislature intended to eliminate complicity as a complete defense to actions brought under the CDA and, instead, allow complicity to be a comparative fault. Therefore, K.R. has standing to pursue a claim under the CDA despite her alleged complicity in the illegal sale of alcohol.

Affirmed.

---

**10.** In light of this opinion, we recommend that the Minnesota District Judges Association revisit Category 45, Civil Damages Act, of 4 *Minnesota Practice—Jury Instruction Guides, Civil* (4th ed.1999).