Patrick A. HAUGEN, Appellant,

v.

TOWN OF WALTHAM, Respondent.

No. 49964.

Supreme Court of Minnesota.

March 28, 1980.

Rehearing Denied June 11, 1980.

Krofchalk, Steward & Perry and M. John Steward, Rochester, for appellant.

Baudler, Baudler & Maus and William J. Baudler, Austin, for respondent.

Heard before PETERSON, TODD, and WAHL, JJ., and considered and decided by the court en banc.

TODD, Justice.

Patrick Haugen recovered a judgment against the Town of Waltham in a negligence action. As part of its special verdict, the jury found that Haugen would sustain $3,000 in future medical expenses. After making certain other deductions, the trial court deducted the $3,000 future damages from the verdict, and Haugen appealed. We reverse.

The facts in this matter have been stipulated. The stipulated facts provide:

On May 5, 1976 the Plaintiff, Patrick A. Haugen, was driving an automobile in a northerly direction on a township road approximately three miles north of Waltham Township in Mower County, Minnesota. The Plaintiff had never driven or ridden on this particular road before. There is a "T" intersection which the Plaintiff was approaching and he was driving north on the stem of the "T" at approximately 9:30 to 9:45 in the evening. The road was a gravel road and was level.

The weather was clear, but it was dark outside. There were no warning signs, stop signs, or road information signs posted at or near the intersection. The Plaintiff was operating his vehicle at an approximate speed of 40 miles per hour. He observed that the road came to an end at which time he slammed on his brakes but was unable to bring his automobile to a stop before it crashed into the ditch on the north side of the road. The Plaintiff hit his face and mouth on the steering wheel, knocking out his front incisors and chipping the bottom incisors. He was taken to St. Mary's Hospital by ambulance and treated there for his injuries. He damaged and lost teeth necessitating dental and orthodontic care and treatment.

Approximately five years prior to the accident a diamond shaped sign had been installed on the north side of the intersection where the accident happened by a former Waltham Town Board member and the sign had been authorized by all members of the Board. However, the sign was not in place at the time of the occurrence of the accident and it had been removed approximately six months prior to the occurrence of the accident.

A lawsuit was commenced and the case was tried in Mower County District Court before Judge Roger S. Plunkett, acting Judge of the District Court. A special verdict was submitted to the jury after the conclusion of the evidence and a copy of a special verdict, marked Exhibit "A" and incorporated by reference herein is attached to this statement. The jury was called upon to make determinations relative to the negligence of the parties and damages suffered by the Plaintiff. By agreement of both counsel the following questions were submitted in a special verdict to the jury with the understanding that Memorandums would be later presented to the trial Judge with proposed Conclusions of Law, specifically with regard to the issues of past and future dental expenses:

State the total amount of damages suffered by the Plaintiff.

a) For the treatment expenses to the date of trial. $1,759.51

b) Amount necessary to pay future dental expenses. $3,000.00

c) General damages for pain and suffering, past and future. $9,000.00

Total $13,759.51

Judge Plunkett then entered Findings of Fact, Conclusions of Law and Order for Judgment on November 9, 1978 in which he adopted the special verdict of the jury with respect to questions 1, 2, 3, 4, 5 and 6(c), but, specifically found that the Plaintiff was not entitled to recover the treatment expenses, present or future, as determined by the jury in answer to question 6(a) and 6(b).

Judgment was then entered on December 26, 1978 in the amount of Seven Thousand Two Hundred ($7,200.00) Dollars in favor of the Plaintiff with additional costs and disbursement totaling Seven Thousand Six Hundred Ninety Nine and $^{54}/_{100}$ ($7,699.54) Dollars.

A Notice of Appeal was then filed and served on March 20, 1979 by the Plaintiff from the Judgment.

At the time of the accident the Plaintiff was an insured under a standard automobile insurance policy with a Minnesota Personal Injury Protection endorsement as required by Minn.Stat. § 65B.44.

That this Appeal presents the sole issue of the deductibility of future dental expenses as found by the jury, from the Judgment pursuant to Minn.Stat. § 65B.51.

The issue for consideration is whether the deduction of an award of future dental expenses from the verdict, pursuant to Minn.Stat. § 65B.51, subd. 1 (1978), was proper.

The Minnesota No-Fault Automobile Insurance Act, Minn.Stat. § 65B.41, et seq. (1978), is a "modified" no-fault act which allows a person injured through the use of a motor vehicle to maintain a tort action in certain specified instances. See Minn.Stat. § 65B.51 (1978). However, the damages which are recoverable in such an action are limited by Minn.Stat. § 65B.51 (1978), as amended by 1977 Minn.Laws, ch. 266, § 4, which provides:

> With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, there shall be deducted from any recovery of the value of basic or optional economic loss benefits paid or payable *or which will be payable in the future,* or which would be payable but for any applicable deductible. [Emphasis added.]

Prior to the 1977 amendment, this statutory section provided for the deduction of economic loss benefits which were "paid or payable" and did not explicitly refer to benefits payable in the future. 1974 Minn. Laws, ch. 408, § 11.

Although the cause of action in this case arose prior to the promulgation of the 1977 amendment, the amended section applies to this case because the amendment merely clarified the statute and did not change the meaning of § 65B.51, subd. 1. The title to the chapter containing the amendment reads:

> An act relating to automobile insurance; *clarifying certain ambiguous provisions* in the Minnesota no-fault automobile insurance act; amending Minnesota Statutes 1976, Sections * * * 65B.51, Subdivision 1; * * *. [Emphasis added.]

1977 Minn.Laws, ch. 266.

Furthermore, this court recently determined in *Gudvangen v. Austin Mut. Ins. Co.,* 284 N.W.2d 813 (Minn.1979), that the 1977 amendments to the no-fault statute were merely clarifying amendments which "added nothing to change the law."[1] 284 N.W.2d at 817.

---

1. One commentator has stated that, prior to the 1977 amendments, most trial courts had interpreted Minn.Stat. § 65B.51, subd. 1, as requiring only the deduction of no-fault benefits

■ Although no Minnesota cases have interpreted § 65B.51, subd. 1, it is apparent that the language of the statute clearly and unambiguously requires the deduction of no-fault economic loss benefits which will be payable in the future from a tort recovery. This requirement is in furtherance of the stated purpose of our no-fault act to prevent double recovery in cases of injury arising out of the use of a motor vehicle. Minn.Stat. § 65B.42, subd. 5 (1978). *See also* M. Steenson, *No-Fault In A Fault Context*, 2 Wm. Mitchell L.Rev. 109, 133 (1976). It is also consistent with the general rationale of the act that economic loss should primarily be the burden of the no-fault carrier. Minn.Stat. § 65B.42, subd. 1 (1978).

Although this provision may clearly be consistent with the purposes of the act, its application poses numerous problems.[2] The statute is silent as to how future loss benefits to be payable in the future may be determined with any reasonable degree of accuracy. This case presents the issue in a very narrow context since the jury has specifically determined the monetary amount attributable to future medical damages.[3] However, the no-fault carrier of the successful plaintiff in this case is not a party to the action. Thus, the plaintiff has no assurance that his insurance carrier will accept the amount of damages awarded, let alone that it will accept responsibilty for such damages. If the no-fault carrier contests these matters, then the successful plaintiff must relitigate his claim under the arbitra-

tion provisions of his policy. Such a requirement faces a difficult constitutional barrier in Minnesota since Minn.Const. art. 1, § 8, provides:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws."

We particularly note that the constitution refers to "a certain remedy in the laws" which shall "completely" allow such person to obtain justice. Here, the successful litigant obtains an incomplete remedy which lacks certainty. Further, the constitution seems to contemplate a single remedy and not a series of remedies. Other fact situations will produce more complex and unanswerable questions in attempting to apply the provisions of the statute.

■■ Thus, we conclude that while the language of the statute comports with the stated legislative purposes of preventing double recovery, the lack of feasible, constitutionally permissible legislative enactments establishing guidelines for the effective administration of the proposed deduction preclude the courts from the literal enforcement of the statute. Further, the lack of guidelines makes the application of the deduction inequitable and unjust upon successful litigants. The provisions of Minn.Stat. § 65B.51 as to the deduction of future economic loss benefits shall be unen-

---

which had been paid or were presently owing in a tort action. J. Schwebel, *Minnesota No-Fault Update* (CLE article) 41. However, at least one other commentator has argued that the statute as originally written required the deduction of no-fault benefits which were payable in the future even though there was no specific language to that effect. M. Steenson, *No-Fault In A Fault Context*, 2 Wm. Mitchell L.Rev. 109, 125–127 (1976).

2. One author contends that there are no apparent equitable, workable, or constitutional methods by which no-fault benefits payable in the future can be deducted from a recovery. J. Schwebel, *Minnesota No-Fault Update* (CLE article) 41–45.

3. In his CLE article Schwebel discusses the case of *Cook v. Schrader*, Goodhue County File No. 28068, presently pending before this court under the title *Niehues v. Weckerling*, No. 49456 (Minn., filed October 20, 1978), which presents a more difficult issue in that the verdict did not identify what amount was attributable to future medical expenses even though evidence was introduced as to the amount of such expenses. J. Schwebel, *Minnesota No-Fault Update* (CLE article) 42–44. Undoubtedly, other cases will pose equally difficult problems relating to the disposition of claims for future loss of income. In any case courts will also have to deal with the problem of reducing awards to present value.

forceable pending further legislative enactments relating to this subject matter.[4]

Reversed and remanded with instructions to enter judgment consistent with this opinion.

4. It has been suggested that the problem of double recovery could be met by amending the statute to provide that the no-fault carrier be given a credit against future obligations as is done in the case of workers' compensation claimants who receive a third-party recovery. J. Schwebel, *Minnesota No-Fault Update* (CLE article) 41–45.