**Donna M. KLEEMAN, Respondent,**

v.

**Timothy D. CADWELL, Appellant.**

**No. C4-87-686.**

Court of Appeals of Minnesota.

Oct. 20, 1987.

William E. Jepsen, Karon, Jepsen & Daly, P.A., St. Paul, for respondent.

Richard N. Newcome, Richard N. Newcome & R.J. Newcome, P.A., St. Paul, for appellant.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Timothy Cadwell appeals the trial court's judgment, claiming error in the application of the discount statute, Minn.Stat. § 604.07 (1986), enacted by the Minnesota legislature as part of the 1986 Tort Reform Act. Donna Kleeman also seeks review, claiming that the discount statute is unconstitutional. We affirm.

## FACTS

This case was submitted to a jury on the issue of damages alone, with liability admitted. The jury found past pain and disability of $10,000 and future pain and disability of $30,000 over 30 years. During trial, the court denied Donna Kleeman's motion to declare the discount statute, Minn.Stat. § 604.07, unconstitutional. At the conclusion of the trial, counsel for both parties submitted arguments to the court on the proper application of the statute.

Timothy Cadwell argued that future damages should be discounted pursuant to a lump-sum calculation, resulting in a present value of $6,555. Kleeman argued that future damages should be discounted on an annuity basis, spreading the damage award evenly over the 30–year period. The trial court accepted Kleeman's discount calculation, spread the $30,000 future damage award evenly over 30 years at $1,000 per year, discounted at a rate of 5.2 percent, and reached a present value of $15,026.

Cadwell appeals from the judgment, arguing that the discount statute does not provide that future damages be paid on an annuity basis. Kleeman contends that the statute is unconstitutionally vague and denies an injured party due process of law, trial by jury, and a certain remedy at law under the Minnesota Constitution.

## ISSUES

1. Was it error for the trial court to discount future damages of pain and disability by an annuity method rather than a lump-sum method?

2. Is this application of Minn.Stat. § 604.07 unconstitutionally vague, and does it deny an injured party due process of law, trial by jury, or a certain and complete remedy at law in violation of the Minnesota Constitution?

## ANALYSIS

In a companion opinion released today, *Johnson v. Farmers Union Central Exchange,* 414 N.W.2d 425 (Minn.Ct.App. 1987), this court determined the constitutionality of the discount provisions of the Tort Reform Act against claims of vagueness, deprivation of due process, equal protection and a certain remedy. We address in this opinion the proper calculation of the discount and whether this discount calculation is unconstitutional as denying the injured person due process, a certain remedy, or the right to a jury trial.

### I

The discount statute requires that all future damages in personal injury actions be discounted to present value:

> In all actions seeking damages for personal injury, wrongful death, or loss of means of support, awards of all future damages, including economic, noneconomic and intangible loss, reasonably certain to occur must be discounted to present value as provided in this section.

Minn.Stat. § 604.07, subd. 2 (1986). The jury determined that Kleeman will suffer $30,000 in pain and suffering over a period of 30 years. Cadwell contends that the trial judge erred in discounting this award under the "annuity method," by which the award is divided by the number of years over which the damages will be suffered, and the resulting amounts are separately discounted to present value and totaled. Under the "lump sum" method proposed by Cadwell, the entire award would be multiplied by the discount factor, representing the present value of that award at the end of the period over which damages are incurred.

The discount statute does not specify the method of discount, nor has an appellate court addressed this issue. In *Bianchi v. Nordby*, 409 N.W.2d 835 (Minn.1987), the Minnesota Supreme Court upheld an award discounted by the trial judge according to the annuity method. *Id.*, 409 N.W.2d at 836. However, the appeal in *Bianchi* turned on whether the court or the jury should perform the discounting under the statute, and the choice between lump sum and annuity methods was not raised. *Id.*, 409 N.W.2d at 839–40.

Prior to the enactment of Minn.Stat. § 604.07, the Minnesota Supreme Court had required that certain damages be discounted to present value, but had not specified the discount factor. *See Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W. 2d 672, 684 (Minn.1977). Similarly, the court allowed juries to consider the effect of inflation in reaching their awards and allowed expert testimony on the subject of inflation. *Id.* As the *Ossenfort* court pointed out in deciding whether to allow evidence on inflation, an appropriate award requires the balancing of two conflicting policies:

> On the one hand, to prevent overcompensation of a plaintiff to the unjustified hardship of a defendant; and on the other hand, to avoid undercompensation of a plaintiff for injuries for which the law holds a defendant liable.

*Id.* By specifying a discount rate formula, the discount statute has alleviated the uncertainty occasioned by prior judicial practice. The rate formula reflects the common-law policy of preventing both undercompensation and overcompensation by requiring that both inflation and the interest rate be taken into account in determining the discount rate.

■ A major problem in applying the discount statute has been that future damages rarely lend themselves to precise determinations of when they will be incurred. *See Bianchi*, 409 N.W.2d at 840 (Simonett, J., concurring specially). Unless there is evidence to support submitting the issue of damages to the jury on a different basis, a verdict form which requires only a determi-

nation of the total future damages and the years over which they will be sustained is appropriate. *Id; see* 4 Minn.Dist. Judges Ass'n, *Minnesota Practice*, CIVIL JIG III, Special Verdict Form No. 7. Thus, unless it appears from the evidence that damages will be sustained unevenly, which makes a more detailed verdict form appropriate, damages may be assumed to be spread more or less evenly over the specified time period.

· ■ In this case, Cadwell did not challenge the submission of the damages issue to the jury on the standard special verdict form. He nonetheless argues that it was improper to spread the damages over the 30–year period for purposes of discounting. We decline to accept this position.

Present value diminishes as time of payment is pushed into the future; one dollar next year has a substantially greater present value than one dollar 30 years from now. However, under the lump-sum method proposed by Cadwell, damages incurred next year would be discounted at the same rate as damages incurred 30 years from now. Since we assume, in the absence of evidence to the contrary, that Kleeman's damages will be spread more or less evenly over the 30–year period, this means she will incur pain and disability damages in the approximate amount of $1,000 next year.

Using the annuity method, the trial court discounted by the factor required to produce $1,000 of compensating income next year, resulting in an imputed award of $950 for that year. If the court had used the lump-sum method, Kleeman would have received only an imputed $218.50 as compensation for next year's damages. Invested at the discount rate of 5.2 percent, such an award would have given Kleeman only $229.86 as compensation for her next-year damages of $1,000.

While the deficiency would decrease in future years, the overall result of using the lump-sum method would be substantial undercompensation. We accordingly hold that in the absence of evidence and a corresponding special verdict indicating uneven distribution of future damages, the annuity

method of discounting was properly applied.

In reaching this result, we do not suggest that damages for pain and disability can be quantified on a per annum basis. *See Ahlstrom v. Minneapolis, St. Paul & Sault Ste. Marie Railroad Co.*, 244 Minn. 1, 29–30, 68 N.W.2d 873, 891 (1955). We merely hold that the proper application of the discount statute requires a method of discount that would allow for compensation of damages roughly as they are incurred, rather than requiring that the award be invested at the discount rate for the entire period over which damages are suffered before full compensation can be achieved.

## II

In responding to Kleeman's constitutional arguments, we address her claims that the application of the statute denies her due process and the right to a jury trial. We also address the proper application of the statute under the certain remedy clause.

## A

■ Kleeman argues that Minn.Stat. § 604.07 denies her due process of law in violation of Article I, § 7, of the Minnesota Constitution because it (1) maintains the discount rate at an artificially high level basing it on the statutory interest rate on judgments which, under Minn.Stat. § 549.09, subd. 1(c) (1986), can never fall below 8 percent; (2) bases the discount rate on only a five-year period; and (3) maintains an arbitrary 2 percent floor below which the discount rate cannot fall.

Whether the discount provisions deprive Kleeman of due process depends on whether the statute is rationally related to the achievement of a legitimate purpose. *Essling v. Markman*, 335 N.W.2d 237, 239 (Minn.1983) (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 723, 66 L.Ed.2d 659 (1981)). Although the discount statute does not itself state its purpose, the Tort Reform Act was intended to address the problem of high, unpredictable damage awards and transaction costs. The purpose of the discount law is to introduce greater certainty into the calculations of future damages and to obviate expert testimony on interest rates and inflation. *See* Cole, *Tort Reform–Toward Moderation*, 13 Wm. Mitchell L.Rev. 335, 342 (1987).

Although there are various methods by which an appropriate discount rate may be determined, *see Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 541–47, 103 S.Ct. 2541, 2552–55, 76 L.Ed.2d 768 (1983); *Trevino v. United States*, 804 F.2d 1512, 1519 (9th Cir.1986), the Minnesota discount statute is based on the "real" interest rate approach, in which the discount rate is adjusted for inflation. Under that approach, the rate is determined by subtracting the average annual change in the consumer price index over a period of years from the effective annual interest on government bonds held during the same period. The objective of the method is to determine the "real" yield of money: that portion of interest charged on virtually risk-free investments that represents only the real cost of money and not the additional cost the lender charges as a hedge against inflation. *Doca v. Marina Mercante Nicaraquense, S.A.*, 634 F.2d 30, 35 (2d Cir.1980), *cert. denied*, 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981); *see also Feldman v. Allegheny Airlines, Inc.*, 382 F.Supp. 1271, 1306–12 (D.Conn.1974) *affirmed* 524 F.2d 384 (2d Cir.1975).

This approach assumes that market interest rates include two components—an estimate of anticipated inflation and a desired "real" rate of return on investment. If a lender knows that the loan is to be repaid with dollars that are less valuable than those advanced, the lender will charge an interest rate that is high enough to compensate not only for the temporary loss of use of the loan proceeds, but also for their shrinkage in value.

To effectuate the "real" interest approach, the Minnesota discount statute requires that future damages be "ascertained * * * without reference to projected inflationary * * * changes." Minn.Stat. § 604.07, subd. 3. In determining the discount rate, inflation (determined from the

Consumer Price Index) is deducted from the market interest rate (determined from the secondary market yield of United States treasury bills). *See* Minn.Stat. § 604.07, subd. 4; § 549.09, subd. 1(c). The result is presumed to be the "real" component of the market interest rate.

Long-term "real" interest rates of return on U.S. treasury bills have historically stayed slightly ahead of the rate of inflation. Between 1947 and 1978 the real return on U.S. treasury bonds averaged 0.8 percent. *See* Sherman, *Projection of Economic Loss: Inflation v. Present Value,* 14 Creighton L.Rev. 723, 732 (1981); *see also Pfeifer,* 462 U.S. at 548–49, 103 S.Ct. at 2556 n. 30 (comparatively, Australian real interest rates between 1950 and 1979 averaged out to a negative rate of -.7 percent, with 4 percent the highest positive rate and –20.2 percent the greatest negative rate in any year. The greatest U.S. negative real interest rate was –70 percent in 1917).

Courts using the "real" interest discount approach have adopted rates between 1.5 percent and 2 percent, on the theory that those rates represent a good approximation of the long-term real interest rate. *See, e.g., Doca,* 634 F.2d at 39 (adopting 2 percent); *Feldman,* 524 F.2d at 388 (upholding discount rate of 1.5 percent). The U.S. Supreme Court, in reviewing the calculation of an award for lost earnings in a maritime action, held that a court will not be reversed "if it adopts a rate between 1 and 3% and explains its choices." *Pfeifer,* 462 U.S. at 549, 103 S.Ct. at 2556. Significantly, a number of federal courts have held that a negative discount rate may be justified because interest rates have often historically yielded a negative real return on investment. *See Trevino,* 804 F.2d at 1517; *see also Feldman,* 382 F.Supp. at 1309 (indicating that during ten of the 34 years between 1940 and 1974 real interest rates yielded a negative return).

· The discount rate calculated by the Minnesota state court administrator in accordance with Minn.Stat. § 604.07 has been unusually high relative to long-term real interest rates. For example, the discount rate set on January 21, 1987 was 5.2 percent, well above historical long-term real interest rates in the United States.

Nonetheless, the use of the discount statute appears reasonably related to statutory purposes. The underlying rationale of the statute is that present awards of future damages are intended to reimburse the injured party for losses that will occur in future years. Because proper investment of a damage award will generate income, an injured party is overcompensated if paid the full amount of future damages at the time the judgment is entered. On the other hand, an injured party is still made whole if the payment for future damages is received in discounted dollars, since those dollars, if invested wisely, will generate the entire amount necessary to compensate for the injury. The prudent plaintiff who invests the award is thus not disadvantaged.

While it can be argued that the discount formula should be tied to the prime rate or bond rates, that the discount rate should have been averaged over ten years rather than five years, or that the two percent floor should be eliminated, it cannot be concluded on those grounds that the discount formula required by the statute is totally without a rational basis. Kleeman has not shown that the discount statute is unconstitutional as a denial of due process.

### B

■ Kleeman also contends that the application of the discount statute denies an injured party a certain and complete remedy in violation of the Minnesota Constitution, which provides:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person * * * and to obtain justice * * * completely and without denial, promptly and without delay, conformable to the laws.

Minn. Const. art. I, § 8.

Although section eight has been frequently cited, by 1984 it had been expressly relied on to strike down statutes or abrogate immunities in only four cases. *See* Mickelsen, *The Use and Interpretation of Article I, Section Eight of the Minnesota*

*Constitution 1861–1984,* 10 Wm. Mitchell L.Rev. 667, 675 (1984). Not until 1949 did the Minnesota Supreme Court formulate a rule for measuring section eight challenges. *Breimhorst v. Beckman,* 227 Minn. 409, 436, 35 N.W.2d 719, 735–36 (1949). The rule was later restated more liberally to permit the abrogation of a common-law right or remedy without providing a reasonable substitute if a permissible legislative objective is pursued. *Haney v. International Harvester Co.,* 294 Minn. 375, 385, 201 N.W.2d 140, 146 (1972).[1]

Kleeman argues that because an injured party's ability to recover full damages depends on the application of a fair discount rate, the discount statute violates the certain remedy clause by artificially inflating the discount rate. Choosing an adequate rate necessarily involves a prediction about the type of investment required to achieve the full recovery of damages in the future. An abnormally high discount rate would require that an injured party make riskier investments, thus also requiring that he or she be an experienced and skillful investor in order to recover full compensation. If the rate is too high in relation to historical rates of return on safe investments, the injured party will not fully recover.

In principle, therefore, the discount rate does affect the injured party's remedy. The U.S. Supreme Court recognized the possibility that a high rate could reduce the recovery when it initially permitted discounting of future damage awards. *Chesapeake & Ohio Railway Co. v. Kelly,* 241 U.S. 485, 490–91, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916). For this reason, the Court recently held that the discount rate applied in a federal case should be based only on the best and safest investments. *Pfeifer,* 462 U.S. at 537, 103 S.Ct. at 2550.

While there may thus be a relationship of constitutional dimension between the discount rate and certainty of recovery of future damages in some cases, the burden remains on Kleeman to show that uncertainty. Assuming that the annuity method of calculation will be applied in the absence of a showing that damages are unevenly distributed, we do not believe that Kleeman has met that burden.

The *Haney* rule permits the abrogation of a common-law right or remedy without providing a reasonable substitute if a permissible legislative objective is pursued. The legislature's objective in passing the discount statute was to achieve certainty, prevent overcompensation, and lower the cost of damage awards in order to reduce the cost of insurance. Although discounting to present value will reduce the award, if the award is prudently managed the injured person will receive the full amount of compensation awarded by the jury. Therefore, under the *Haney* standard of review, Kleeman has not shown the statute to be unconstitutional.

## C

■ Finally, Kleeman asserts that the discount statute violates her right to a jury trial under Article I, § 4, of the Minnesota Constitution because the application of the statute requires an implicit factual finding that damages would be incurred evenly throughout the period over which they are incurred, thus depriving her of the right to a jury trial on that finding. This argument fails because the purpose of discounting is not to determine when a plaintiff's damages will be incurred, but rather to ensure that he or she receives full compensation for the damages determined by the jury. The "finding" that damages will be evenly distributed is merely an administrative device which ensures adequate compensation in the absence of a special verdict by the jury determining that damages are not evenly distributed. The parties remain free to present evidence of uneven distribution and request that the case be submitted to the jury on that basis.

---

1. The Minnesota Supreme Court has not applied the *Haney* test in every case. In *Haugen v. Town of Waltham,* 292 N.W.2d 737, 740 (Minn. 1980), the court focused instead on the consequences of the challenged legislation measured against an interpretation of the section's language and concluded that the statute, as applied, would give the litigant only an incomplete remedy and the prospect of multiple lawsuits before obtaining full recovery. *Haugen* does not control, since Minn.Stat. § 604.07 does not leave Kleeman in a similar position.

Nor does the fact that the discounting is to be done by the judge, rather than the jury, deprive a plaintiff of the right to a jury trial, since it does not curtail the function of the jury to decide questions of fact. *See Genzel v. Halvorson,* 248 Minn. 527, 530, 80 N.W.2d 854, 857 (1957) (quoting *Dimick v. Schiedt,* 293 U.S. 474, 492, 55 S.Ct. 296, 303, 79 L.Ed. 603 (1934) (Stone, J., dissenting)); *cf. Marks v. Mobil Oil Corp.,* 562 F.Supp. 759, 774–75 (E.D.Pa. 1983), *affirmed* 727 F.2d 1100 (3d Cir.1984) (rule requiring court to increase damage award by ten percent per annum for delay did not violate federal jury trial right when jury was instructed not to consider interest in determining damages). The discount statute does not subtract from the jury's findings on damages, but rather merely provides the mechanism by which the present value of those damages is determined.

### DECISION

Respondent has not shown that Minn. Stat. § 604.07 is unconstitutional. The trial court properly discounted future damages in accord with that statute by calculating the present value of the award on an annuity basis.

Affirmed.

RANDALL, J., concurs specially.

RANDALL, Judge (concurring specially).

I concur both in the result and the reasoning of the majority. I am concurring specially to draw attention to the unfairness of the discount provision of the Tort Reform Act as it is applied to young plaintiffs with lifetime injuries.

The numbers in this case form a good starting point. The plaintiff received a verdict for future pain and disability of $30,000, and the jury found the pain and disability severe enough to last 30 years. Thus, according to the way we interpret the statute, that $30,000 jury verdict is reduced to $15,000. The position of the defendant and the insurance industry would reduce that sum even further down to a lump sum which, after 30 years, would

equal $30,000, assuming all principal and interest were rolled over. The defendant's position is that the $30,000 should be discounted down to $6500.

I take judicial notice of the fact that competent personal injury law firms charge contingent fees ranging from a minimum of 25 percent on minors up to 33⅓ to 40 percent on adults, plus reimbursement for all necessary costs and expenses incurred. The fee schedule may seem high, but it is not. The vast majority of plaintiffs cannot afford the prevailing rates of $100 to $250 an hour for competent trial attorneys, plus a requirement that they pay for all expenses, depositions, medical and technical experts up front, as would be the case without the contingent fee.

In a complex personal injury or products liability case with highly technical and medical questions, out of pocket costs for discovery and experts through a trial can run into thousands of dollars. Thus, the right of severely injured plaintiffs to go into court and seek redress would be irrevocably weakened, if not completely destroyed, if contingency fee arrangements were not available. Thus, for competent trial litigators to invest their own time and their own money preparing for trial without a guaranteed fee, the standard contingency fee of 33⅓ percent of any recovery is an absolute necessity for them to justify involvement.

In this case, after deducting a one-third fee, the plaintiff will likely net only $8000 to $9000 out of the $15,026 discounted verdict, depending on the amount of pretrial and trial expenses. Under the defendant's version of a one time lump sum amount of $6500, the plaintiff, whom the jury found had pain and disability that would last 30 years, would net approximately $4000 after deduction of a contingency fee and some normal pretrial and trial expenses.

Here, the plaintiff was a woman with an age of 41. Assuming the plaintiff had been a two or three year old baby, and the jury had found the future pain and disability would last a lifetime, (e.g. life expectancy of say 68–70 years), the same payment and disability award of $30,000 would have

been cut well below $10,000 on the annuity basis, leaving a probable net to the injured plaintiff of $5000 to $6000, or less, and on a lump sum basis, a two or three year old plaintiff with this lifetime injury, and a $30,000 future pain and disability verdict, would have netted just several hundred dollars!

The anomaly and the patent unfairness becomes clear when comparing very young plaintiffs to very old. Assume an elderly person with a life expectancy of five to six years received the same verdict of $30,000 for future pain and disability. The discounted basis would only reduce it a few thousand dollars, and the lump sum basis not much more. On the other hand, the young plaintiff for the same injuries receives virtually nothing.

Supposedly, the more severely one is injured, and the longer the future pain, disability, and permanancy is supposed to last, the more money your injuries are worth. The discounted formula under the Tort Reform Act puts plaintiff in the bizarre position of realizing most of a jury verdict *only* when the jury finds injuries that will last for just a few years, or when the jury is dealing with an elderly plaintiff whose life expectancy is short.

Assume two ten year old plaintiffs with identical injuries. One jury awards $100,-000 and finds that those injuries will last for the lifetime of the plaintiff. That plaintiff's verdict under the discount basis will be reduced below one-half of the $100,000. If the other jury finds that, although the injuries are severe, they will last only for seven or eight years and so indicates on their special interrogatories, the second plaintiff will receive a substantial portion of the $100,000.

The legislature has the authority to pass laws, such as the Tort Reform Act, which regulate the insurance industry and the practice of law. However, I'm not sure if the blatant unfairness to young plaintiffs with lifetime injuries was contemplated. A possible method of correcting this inequity would be to reduce the discount range to a minimum of one and a maximum of three percent, and further provide that in no case would any plaintiff receive less than 75 percent of the jury verdict for future pain and disability.

The present lump sum basis argument, which the defendant urges on us, would virtually destroy the right of young plaintiffs with lifetime injuries, after the deduction of necessary legal fees and trial costs, to net an amount anywhere near that needed to make them whole for their losses. Under the discount method which we approve today, the problem is only slightly alleviated. I believe we have correctly applied the law, as it exists today, to the facts, but further study is needed.