**Anthony RAMBAUM, Respondent,**

**v.**

**Susan Lynn SWISHER, Respondent,**

**Hrvatski Dom, an association, Appellant.**

**No. CO-87-2192.**

Court of Appeals of Minnesota.

April 26, 1988.

Review Granted June 29, 1988.

Edward Lynch, Thuet, Lynch, Pugh & Rogosheske, S. St. Paul, for Anthony Rambaum, respondent.

Bradley Cosgriff, Lee L. La Bore & Assoc., Ltd., Hopkins, for Susan Lynn Swisher, respondent.

Rolf E. Sonnesyn, Foster, Waldeck & Lind, Ltd., Minneapolis, for Hrvatski Dom, an ass'n appellant.

Heard, considered and decided by HUSPENI, P.J., and PARKER and MULALLY,* JJ.

## OPINION

PARKER, Judge.

Anthony Rambaum was seriously injured when he was struck by a car driven by Susan Swisher, who was intoxicated at the time. He sued Swisher on a theory of negligence; O'Neill's Bar on the grounds that its sale of alcohol to Swisher was to an obviously intoxicated person and thus in violation of the Dramshop Act; and Hrvatski Dom on the theory that its sale of alcohol to Swisher, a non-club member or non-guest, violated its club liquor license and was thus an "illegal sale" within the meaning of the Dramshop Act. Hrvatski Dom appeals, challenging the jury's implicit finding that alcoholic beverage sales to non-club members or non-guests by a club license-holder are illegal for purposes of dramshop liability. It also contends the joint and several liability statute, Minn. Stat. § 604.02, subd. 1 (1986), violates constitutional rights of equal protection. Rambaum challenges the trial court's reduction of the jury award by $200,000, the amount for which he settled with O'Neill's Bar in a *Pierringer* release, and the constitutionality of the statute requiring that future damage awards be reduced to present value, Minn.Stat. § 604.07, subd. 2 (1986). We affirm in part, reverse in part and remand.

## FACTS

Anthony Rambaum was seriously injured as a result of being struck by a car driven

by Susan Swisher shortly after midnight on September 15, 1985. Rambaum sued Swisher on a theory of negligence and sued Hrvatski Dom and O'Neill's Bar on a dramshop theory.

Swisher and Susan Canard, her friend, arrived at the Croation Hall in South St. Paul at about 6:00 p.m. on September 14, 1985. The Croation Hall is a club operated by Hrvatski Dom, a fraternal organization possessing a club liquor license. That license restricts its alcoholic beverage sales to club members and their guests.

Swisher had nothing alcoholic to drink before arriving at the Croation Hall. While she was there with Canard, she drank three or four mixed drinks. There is no evidence that Swisher was served alcoholic beverages at the Croation Hall while obviously intoxicated, or that she was a minor.

Canard testified that she had been a member of the Croation Hall since 1983 and was a member on the night of September 14, 1985. She was not a member of Hrvatski Dom.

Around 8:30 p.m., Swisher and Canard drove separately to O'Neill's Bar. Swisher drank seven or eight mixed drinks at O'Neill's Bar and left about midnight. On her way home, Swisher careened into Rambaum as he was alighting from his car. Swisher's car kept going until it crashed into a telephone pole.

Before impaneling the jury, O'Neill's Bar entered into a *Pierringer* release with Rambaum for $200,000. Swisher and Hrvatski Dom remained in the case. At trial Rambaum argued that Canard was not a legitimate member of Hrvatski Dom in September 1985 and thus Swisher could not be her bona fide guest and the sale was illegal under the Dramshop Act. Accepting that argument, the jury found that Hrvatski Dom illegally sold alcoholic beverages to Swisher, the illegal sale caused or contributed to Swisher's intoxication, and Swisher's intoxication resulting from the

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

illegal sale was a direct cause of Rambaum's injuries.

The court submitted the fault of all original parties in the action, including O'Neill's Bar, to the jury. The jury found Swisher 80 percent at fault; O'Neill's Bar ten percent at fault, under the theory that the bar sold alcoholic beverages to an obviously intoxicated person; and Hrvatski Dom ten percent at fault. The jury awarded damages totaling $432,035.52, $227,035.52 representing past damages and $205,000 representing future damages.

The trial court reduced the award of future damages according to the annuity method to $97,968.45 and set off collateral sources of $65,825.40. Upon Hrvatski Dom's post-trial motions, it also credited the entire $200,000 *Pierringer* release settlement with O'Neill's Bar against the judgment, resulting in a net judgment of $59,178.57, excluding costs and prejudgment interest of $16,120.95.

## ISSUES

1. Do alcoholic beverage sales to non-club members or non-guests in violation of Minn.Stat. § 340A.404, subd. 1(3) (Supp. 1985), constitute "illegally selling" within the meaning of the Dramshop Act?

2. Need the violation of Minn.Stat. § 340A.404, subd. 1(3) (Supp.1985), proximately cause Rambaum's injuries?

3. Does Hrvatski Dom have standing to challenge Minn.Stat. § 604.02, subd. 1 (1986), on equal protection grounds?

4. Does Minn.Stat. § 604.07, subd. 2 (1986), requiring the reduction of future damages to present value, violate the Minnesota Constitution?

5. Did the trial court err in crediting the entire amount of the *Pierringer* release against the judgment?

## DISCUSSION

### I

Under the Dramshop Act,
[a] * * * person injured in person, property, or means of support by an intoxicated person or by the intoxication of anoth-

er person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by *illegally selling* alcoholic beverages.

Minn.Stat. § 340A.801, subd. 1 (Supp.1985) (emphasis added).

The initial question in this case is whether the sale to Swisher was illegal within the meaning of the statute. The City of South St. Paul issued Hrvatski Dom a club license. A club license restricts sales of alcohol to persons who are members or bona fide guests of club members. Minn. Stat. § 340A.404, subd. 1(3) (Supp.1985). It is a criminal offense to violate this section. *See* Minn.Stat. § 340A.703 (Supp.1985).

The jury found that (1) Hrvatski Dom made an illegal sale of an alcoholic beverage to Swisher; (2) the illegal sale caused or contributed to her intoxication; (3) the intoxication resulting from the illegal sale was a direct cause of Rambaum's injuries; and (4) Hrvatski Dom was ten percent at fault.

Canard testified that she was a member of Croation Hall but was not a member of Hrvatski Dom. The jury did not explicitly find that Canard was not a club member or that Hrvatski Dom's sale to Swisher was to a non-guest. Implicit in the jury's finding of an illegal sale, however, is a finding that Swisher was not a guest: Rambaum argued no other theory of liability against Hrvatski Dom.

■ Hrvatski Dom argues that though its sale to Swisher may have violated its liquor license, "such sale is not illegal for the purposes of the Dramshop Act." We disagree for two reasons.

The Dramshop Act itself does not define what constitutes an illegal sale. The statute imposes liability for "illegally selling" alcoholic beverages when the other statutory requirements of intoxication, causation and injury are met. The statute contains no exceptions.

There was a sale, and that sale was a crime, *see* Minn.Stat. § 340A.703 (Supp. 1985). Because Hrvatski Dom's sale to Swisher was contrary to law, it was "il-

legal" within the plain meaning of that word. *See Black's Law Dictionary* 673 (5th ed. 1979); Minn.Stat. § 645.08(1) (1986) (words shall be construed according to their common usage).

Before 1983, when the supreme court decided *Hollerich v. City of Good Thunder*, 340 N.W.2d 665 (Minn.1983), the supreme court applied the Dramshop Act (or Civil Damages Act) almost mechanically, holding sales in violation of liquor laws to be illegal under the Act. *See, e.g., Murphy v. Hennen*, 264 Minn. 457, 461–62, 119 N.W.2d 489, 492 (1963) (sales to minors); *Strand v. Village of Watson*, 245 Minn. 414, 422, 72 N.W.2d 609, 615 (1955) (sales to obviously intoxicated persons); *Fest v. Olson*, 138 Minn. 31, 33, 163 N.W. 798, 798 (1917) (sales on Sunday).

In *Hollerich* the supreme court examined the purposes of the Dramshop Act to determine whether an "after hours" sale in violation of Minn.Stat. § 340.14, subd. 1 (1982), constituted "illegally selling" within the meaning of the Act. A municipal liquor store had sold a 12–pack of strong beer to an ostensibly sober adult "after hours." Examining the purposes of the Dramshop Act to ascertain legislative intent, the supreme court stated:

> Civil damage acts "although penal in nature, are also remedial in character and, according to the prevailing view, are to be liberally construed *so as to suppress the mischief and advance the remedy.*" The mischief, of course, consists of the social ills resulting from intoxication. Through strict liability sanctions and by placing the burden of economic loss on the vendors, the Act "provides an extremely effective incentive for liquor vendors to do everything in their power to avoid making illegal sales." At the same time, the remedy advanced by the Act is "to compensate members of the public who are injured as a result of illegal liquor sales."

340 N.W.2d at 667–68 (citations omitted, emphasis in original).

The rule which emerged from *Hollerich* is: when a law governing the sale of alcoholic beverages is sufficiently related to suppressing the mischief resulting from intoxication, violation of that law constitutes an illegal sale within the meaning of the Dramshop Act. *See id.* at 668. This court must therefore answer the following question: Is the law permitting clubs to sell liquor only to club members or their guests sufficiently related to suppressing the mischief resulting from intoxication so that a sale in violation of that law constitutes "illegally selling" within the meaning of Minn.Stat. § 340A.801, subd. 1?

The basic concern here is with liquor licenses issued to private, fraternal, ethnic and veteran's clubs. In general, the membership of such clubs can be expected to be acquainted with each other and to have certain bonds among them. The legislature may well have concluded that these factors affect the drinking behavior of their membership and their guests toward moderation. Sales to non-members or non-guests would presumably dilute this inhibitory principle. Therefore, under *Hollerich*, it would seem that the prohibition against sales to non-club members or non-guests is sufficiently related to the purposes of the Dramshop Act that such sales "constitute 'illegally selling' within the meaning of the Act." *See id.* at 668.

## II

Hrvatski Dom claims that its violation of Minn.Stat. § 340A.404, subd. 1(3), did not proximately cause Rambaum's injuries. Proximate cause is present if the defendant's conduct was a "cooperating or concurring cause * * * contributing to the result." *Fest v. Olson*, 138 Minn. at 33, 163 N.W. at 799 (1917). In a dramshop action the plaintiff must establish proximate cause by showing

> a practical and substantial relationship between (a) the circumstances making the sale illegal, and (b) the circumstances accounting for the consumption of the liquor by the one whose intoxication caused damage.

*Kvanli v. Village of Watson*, 272 Minn. 481, 484, 139 N.W.2d 275, 277 (1965); *see Hollerich*, 340 N.W.2d at 669 n. 2.

Here, under (a), the circumstance making the sale illegal is that Hrvatski Dom sold alcoholic beverages to a non-guest, Swisher, whom it would not have served had it complied with the terms of its liquor license. Under (b), that sale to Swisher, whose intoxication caused Rambaum's immediate injuries, contributed to her intoxication. A toxicologist testified that Swisher was intoxicated at the time of the accident and that the drinks Hrvatski Dom sold to her caused or contributed to her intoxication. The jury therefore found, upon sufficient evidence, that the illegal sale contributed to her intoxication and that her intoxication resulting from that sale was a direct cause of Rambaum's injuries. Proximate cause is readily apparent.

Hrvatski Dom confuses the proximate cause issue by focusing on Canard's membership status, asking, "Is there a causal connection or proximate cause between Sheila Canard's status as a club member and Anthony Rambaum's injuries?"

The proximate cause question has nothing to do with Canard's status, but with whether the *sale* was a contributing, proximate cause of Rambaum's injuries. *See Hollerich*, 340 N.W.2d at 668. That sale was found by the jury to have been illegal. Absent Hrvatski Dom's illegal sale to Swisher, it would not be subject to liability. The supreme court addressed a contention similar to Hrvatski Dom's in *Posch v. Lion Bonding & Surety Co.*, 137 Minn. 169, 174, 163 N.W. 131, 133 (1917). The court stated:

Defendant argues that the fact that the liquor was sold on Sunday, rather than on a week day, cannot be considered the proximate cause of the death of Posch. This is correct enough, in that the same result might have followed a legal sale, but the argument leads to nowhere. Had it been a legal sale, no liability would have followed, whatever the proximate result, but, being illegal, the saloon keeper and his surety are liable for the result. *It was the illegality of the sale that made the act a violation of the bond, but, it was the sale itself that was the proximate cause of the death.* The argument confuses the question of whether the act was wrongful and the question of proximate cause.

*Id.* at 174, 163 N.W.2d at 133 (emphasis added, cited with approval in *Hollerich*, 340 N.W.2d at 668).

## III

■ Hrvatski Dom claims that Minn. Stat. § 604.02, subd. 1 (1986), violates the equal protection provisions of the Minnesota and United States constitutions. That statute provides in relevant part:

When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, *except that each is jointly and severally liable for the whole award.*

(Emphasis added). The essence of Hrvatski Dom's challenge is that solvent judgment debtors pay more than their fair share of the judgment. Hrvatski Dom's fear is that Swisher will be declared insolvent and Hrvatski Dom will be stuck "holding the bag."

The threshold problem with Hrvatski Dom's challenge is that it has no standing to contest the statute and its complaint is premature. Hrvatski Dom has presented no evidence that Swisher and Hrvatski Dom stand in the relation of insolvent and solvent judgment debtors or that the statute has operated or is about to operate to Hrvatski Dom's detriment. *See City of Minneapolis v. Wurtele*, 291 N.W.2d 386, 393 (Minn.1980) (person has no standing to raise a constitutional challenge absent a direct and personal harm resulting from the alleged denial of constitutional rights).

## IV

Rambaum claims that Minn.Stat. § 604.07, subd. 2 (1986), which requires awards of future damages to be discounted to present value, is unconstitutional. That statute provides:

In all actions seeking damages for personal injury * * * awards of all future damages, including economic, noneconomic and intangible loss, reasonably

certain to occur must be discounted to present value as provided in this section. The alleged constitutional deficiencies are that the statute (1) is impermissibly vague, (2) denies Rambaum a certain remedy, and (3) adversely affects Rambaum's right to a jury trial.

This court has upheld the statute against constitutional challenges in three cases. *Schreiner v. Schmitz*, 418 N.W.2d 206 (Minn.Ct.App.1988), *pet. for rev. granted* (Minn. Apr. 4, 1988); *Johnson v. Farmers Union Central Exchange, Inc.*, 414 N.W.2d 425 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Nov. 24, 1987); *Kleeman v. Cadwell*, 414 N.W.2d 433 (Minn.Ct.App. 1987).

■ Statutes carry a presumption of constitutionality. *In re Harhut*, 385 N.W. 2d 305, 311 (Minn.1986). A person challenging the statute must prove unconstitutionality beyond a reasonable doubt. *Id.*

### A. Vagueness

■ Rambaum claims that the statute is unconstitutionally vague because it does not specify (1) who should apply the discount rate or (2) "whether the discount to present value should be applied on a lump sum basis or on a periodic accrual [annuity] basis. The supreme court determined in *Bianchi v. Nordby*, 409 N.W.2d 835, 840 (Minn.1987), that the court and not the jury should apply the discount rate. The remaining question is whether the statute should be applied on a lump sum or accrual basis.

The fact that the statute does not specifically indicate whether future damages should be discounted on a lump sum or annuity basis does not render the statute unconstitutionally vague. In the civil context,

> legislation otherwise valid will not be judicially declared null and void on the ground that the same is unintelligible and meaningless unless it is so imperfect and so deficient in its details as to render it impossible of execution and enforcement, and is susceptible of no reasonable construction that will support and give it effect, and the court finds itself unable

to define the purpose and intent of the legislature.

*Wichelman v. Messner*, 250 Minn. 88, 111, 83 N.W.2d 800, 819 (1957) (citation omitted).

■ The flexibility inherent in the statute serves the purpose of discounting, which is "to ensure that [the plaintiff] receives full compensation for the damages determined by the jury." *Kleeman*, 414 N.W.2d at 439. The annuity method of discounting, used by the trial court in this case, will generally best ensure adequate compensation. *See id.*

■ The annuity method assumes that future damages will "be spread more or less evenly over the specified time period." *Id.* at 436. Use of the lump sum method of discounting future damages is not appropriate unless there is evidence to support a special verdict that damages will be sustained unevenly. *See id.* at 439. If the statute required a lump sum method of discounting, a plaintiff whose damages could be expected to be sustained evenly over time might be undercompensated. Whereas, if the statute required an annuity method of discounting, a plaintiff whose damages could be expected to be sustained unevenly over time might be overcompensated. Flexibility in applying a statute to the particular facts of a case does not render a statute vague.

### B. Right to a Jury Trial

■ Rambaum claims that the jury and not the court should perform the reduction to present value and that taking that function from the jury denies the plaintiff a right to a jury trial. Under Minn. Const. art. 1, § 4,

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy, but a jury trial may be waived by the parties in all cases in the manner prescribed by law * * *.

It is unnecessary to address Rambaum's general attack on the constitutionality of the statute. Although Rambaum moved at trial to challenge the constitutionality of

section 604.07, subd. 2, he did not request that the jury perform the discounting function. Without deciding whether Rambaum had a right to a jury trial on the discounting issue, we conclude that Rambaum waived any jury trial right that he may have had by failing to request an instruction on the issue. *See* Minn.R.Civ.P. 49.01; *Lemmer v. IDS Properties, Inc.*, 304 N.W. 2d 864, 870 (Minn.1980).

### C. Certain Remedy

■ Rambaum's final constitutional claim is that section 604.07 denies a plaintiff a certain remedy in violation of Minn. Const. art. 1, § 8. The uncertainties allegedly inherent in the statute are (1) the fluctuations in the discount rate and (2) the uncertainty of whether to use the lump sum or annuity method of discounting. This court completely addressed both contentions in *Johnson*, 414 N.W.2d at 429–30, and *Kleeman*, 414 N.W.2d at 438–39, and determined that the statute was constitutional as against this attack.

### V

### A. Section 604.01, subd. 5

■ Rambaum entered into a *Pierringer* settlement with O'Neill's Bar for $200,-000 prior to impaneling the jury. The court submitted the fault of O'Neill's Bar to the jury; it found O'Neill's Bar ten percent at fault. The trial court credited the entire $200,000 settlement against the judgment. The court based the credit on Minn.Stat. § 604.01, subd. 5 (1986).

Minn.Stat. § 604.01 provides in pertinent part:

**604.01 COMPARATIVE FAULT; EFFECT.**

**Subdivision 1. Scope of application.** Contributory fault shall not bar recovery in an action by any person * * * to recover damages for fault resulting in death or in injury to person or property, if the contributory fault was not greater than the fault of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of fault attributable to the person recovering. The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each party; and the court shall then reduce the amount of damages in proportion to the amount of fault attributable to the person recovering.

\* \* \* \* \* \*.

**Subd. 2. Personal injury or death; settlement or payment.** Settlement with or any payment made to an injured person * * * shall not constitute an admission of liability by the person making the payment or on whose behalf payment was made.

\* \* \* \* \* \*.

**Subd. 5. Credit for settlements and payments; refund.** All settlements and payments made under subdivision[ ] 2 * * * shall be credited against any final settlement of judgment; provided however that in the event that judgment is entered against the person seeking recovery or if a verdict is rendered for an amount less than the total of any such advance payments in favor of the recipient thereof, such person shall not be required to refund any portion of such advance payments voluntarily made. Upon motion to the court in the absence of a jury and upon proper proof thereof, prior to entry of judgment on a verdict, the court shall first apply the provisions of subdivision 1 and then shall reduce the amount of the damages so determined by the amount of the payments previously made to or on behalf of the person entitled to such damages.

Rambaum claims the trial court erred in granting this offset. He contends the "maximum credit against any judgment * * * is 10%, which was the fault attributable to O'Neill's Bar, Inc."

Hrvatski Dom claims the *Pierringer* release provides one form of relief to it (a nonsettling defendant), a setoff based on the settling defendant's ten percent fault, and that Minn.Stat. § 604.01, subd. 5, provides another form of relief, a money credit

on the judgment based on the amount the settling defendant paid to the plaintiff.

The statute is ambiguous at best. The supreme court interpreted section 604.01, subd. 5, in *Anunti v. Payette*, 268 N.W.2d 52 (Minn.1978). In that case, after the jury had begun its deliberations but before it had returned its verdict, one defendant entered into a settlement agreement with the plaintiffs. The jury found that neither the plaintiffs nor the settling defendant was negligent.

The nonsettling defendant argued that under section 604.01, subds. 2 and 5, the trial court erred in failing to reduce the amount of the jury award by the amount of the settling defendant's out-of-court settlement. *Id.* at 53. Rejecting this argument, the supreme court stated:

> While the statute refers to settlements, we agree with the trial court that the language deals only with the question of payments made prior to the determination of the case and that such prepayments shall be credited to any final settlement or judgment. As such, the statute has no application to the facts of this case. Here [the settling defendant] remained in the case after executing the settlement agreement and the jury determined that there was no liability on his part. Under these circumstances, [the settling defendant] is not a joint tortfeasor and it would be inequitable to allow * * * the nonsettling defendant[ ] to profit from a settlement agreement between plaintiffs and [the settling defendant] by reducing the amount of his own individual liability by the amount of the settlement.

*Id.* at 56.

Hrvatski Dom argues that the reasons the court did not apply the subdivision 5 credit in *Anunti* are not present here. O'Neill's bar *was* found liable.

We do not think this case is distinguishable from *Anunti*. Though O'Neill's Bar was found negligent and the settling defendant in *Anunti* was not, the equities are still the same: It would be unfair to allow the nonsettling defendant to benefit from the plaintiff's bargain. *See id.* As the supreme court stated in *Shantz v. Richview, Inc.,*

> we believe it would be inequitable to allow defendant, the nonsettling party, to profit from a settlement agreement between plaintiff and third-party defendant. * * * It should be no concern of the nonsettling defendant how much the plaintiff received from the settling defendant—in some case (like this one, where it was later determined by the jury that the settling defendant was not negligent) plaintiff will have made the better bargain; in others, the settling defendant will have made the better bargain. *In either case, all that should concern the nonsettling defendant is that he not be required to pay more than his percentage share of the total damages which the jury determines the plaintiff sustained.*

311 N.W.2d 155, 156 (Minn.1981) (emphasis added).[1]

Hrvatski Dom's interpretation of section 604.01, subd. 5, would also have the practical effect of discouraging settlements. "[C]ourts should encourage settlements openly made with prompt and adequate notice to the trial judge and all interested parties." *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn.1978). Under Hrvatski Dom's interpretation, however, it would be foolish for any tortfeasor to settle after a joint tortfeasor has settled for a substantial amount. If the plaintiff made a good bargain, the nonsettling defendant would be the beneficiary of that bargain. If the plaintiff made a bad bargain, the nonsettling defendant would still not be liable for

---

1. *Shantz* involved the question of whether payment pursuant to a *Pierringer* release by a nonnegligent defendant entitled the nonsettling defendant to a money credit against the judgment based on the full amount of the payment. *Shantz,* 311 N.W.2d at 156. The supreme court reversed the trial court's reduction of the jury's award of $12,000 by $9,000, which represented the amount paid by the settling defendant. The jury found the settling defendant not negligent. Though subdivision 5 is mentioned nowhere in that opinion, the court relied on the reasoning of *Anunti,* which interpreted that subdivision.

more than his percentage of fault. *See Shantz*, 311 N.W.2d at 156. The nonsettling defendant would be in a no-lose situation.

A plaintiff, too, would be discouraged from settling. He would stand to gain no benefit from an apparently favorable settlement—that is, from a payment in excess of the settling defendant's percentage of fault (ultimately determined) as applied to the verdict. The plaintiff still stands to lose from a bad bargain. He can recover no more from the settling defendant than the settlement amount even if the plaintiff would have been entitled to more on the basis of the settling defendant's fault had the settling defendant remained in the case. The plaintiff's incentive to settle would thus be greatly reduced.

### B. Reallocation Statute, Minn.Stat. § 604.02, subd. 2

 The supreme court has said, and Hrvatski Dom argues, that "[l]ogically, [the plaintiff] should not recover more than the amount of the verdict, since this represents his total damages." *Barlage v. The Place, Inc.*, 277 N.W.2d 193, 196 (Minn. 1979). It is by no means apparent, however, that by our holding the plaintiff will be overcompensated. The driver was found to be 80 percent at fault and had insurance limits of $50,000. Thus, depending on the extent of the driver's nonexempt assets, there may well be a serious shortfall.

Minn.Stat. § 604.02, subd. 2 (1986), provides in pertinent part:

Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault.

Thus, if Swisher's obligation becomes uncollectible, as Hrvatski Dom speculates, the court shall reallocate her obligation equally between O'Neill's Bar and Hrvatski Dom upon a proper motion.[2]

The plaintiff will still have a contingent liability to indemnify the settling defendant. Although the parties have provided no record of the *Pierringer* release, according to oral argument of counsel, that release requires Rambaum to indemnify O'Neill's Bar against any contribution claim by a nonsettling tortfeasor. Rambaum must absorb the loss of any uncollectible amount for which O'Neill's Bar would have been liable but for the release. It is speculative and dubious to say that he may have a windfall.

Accordingly, the trial court erred in crediting the full amount of the $200,000 settlement against the judgment. Only ten percent of the judgment, representing O'Neill's Bar's percentage of fault, should be offset.

### DECISION

Affirmed in part, reversed in part and remanded for determination of payment to be made by Hrvatski Dom consistent with this opinion.

---

2. *See Hosley v. Armstrong Cork Company*, 383 N.W.2d 289, 294 n. 3 (reallocation formula). Ten twentieths, or one half, of the uncollectible amount would be allocated to Hrvatski Dom and ten twentieths would be allocated to O'Neill's Bar.