Emil J. JEWETT, Jr., as father and natural guardian of Danielle N. Jewett and Andrew J. Jewett; Emil J. Jewett, Jr., as trustee for the Estate of Mary V. Jewett, and Emil J. Jewett, Jr., individually, Respondent,

v.

Robert DEUTSCH, d/b/a Bob's Tavern, Appellant (C8–88–751), Respondent (C3–88–818),

Dale Steven Welker, Respondent (C8–88–751), Appellant (C3–88–818).

Nos. C8–88–751, C3–88–818.

Court of Appeals of Minnesota.

March 28, 1989.

Edward J. Matonich, Hibbing, for Emil J. Jewett.

Timothy W. Waldeck, Minneapolis, for Robert Deutsch.

Romaine R. Powell, Bemidji, for Dale Steven Welker.

Heard, considered and decided by RANDALL, P.J., SCHUMACHER and SHORT, JJ.

## OPINION

SCHUMACHER, Judge.

Appellants challenge the trial court's judgment, amended judgment, and order denying new trial. We affirm in part, reverse in part and remand for a new trial on damages.

### FACTS

On November 19, 1986 in the City of Grand Rapids an automobile driven by Mary Jewett was struck by one driven by Dale Welker. As a result of the collision, Mary Jewett sustained severe injuries from which she died four days later. Welker had been drinking for at least four hours before the accident. After he drank three cans of beer at a friend's house, Welker stopped at a bar owned by Robert Deutsch d/b/a Bob's Tavern, where he consumed approximately 10–15 more beers.

Respondent Emil Jewett commenced an action against Welker and Deutsch, alleging negligence and illegal sale of intoxicating liquor. At trial, Welker admitted liability, but Deutsch denied causal fault. The jury by special verdict found Welker 55 percent negligent and Deutsch 45 percent negligent. The trial court allowed all damage questions to go to the jury, which made the following findings:

| | |
|---|---|
| Loss of Means of Support to Date of Trial | $ 14,600.00 |
| Pecuniary Loss to Date of Trial | $ 35,000.00 |
| Future Damages to Loss of Means of Support over 25 Years | $277,000.00 |
| Future Pecuniary Losses over 31 years | $900,000.00 |

(Medical and Funeral expenses were predetermined and listed on the special verdict form as $6,544.82 and $3,422.20, respectively.)

The trial court denied appellants' motions for new trial, remittitur, and for judgment notwithstanding the verdict. The court did not reduce the damage award by an amount for collateral sources or by the $400,000 cap set forth in Minn.Stat. § 549.24 (1986). The court applied the annuity method in discounting future pecuniary damages to $474,590.61, and future loss of means of support to $162,618.61. Finally, the court awarded prejudgment interest on all past damages. Appellants challenge the trial court's judgment, amended judgment and order denying new trial.

### ISSUES

1. Did the trial court err by allowing recovery of pecuniary damages in excess of $30,000?

2. Is the jury's finding that Welker was obviously intoxicated supported by sufficient evidence?

3. Did the trial court err by failing to instruct the jury to calculate when future damages would begin to occur?

4. Did the trial court err in discounting the award of damages pursuant to Minn. Stat. § 604.07 (1986)?

5. Did the trial court err in denying appellants' motion for a new trial on the grounds that the damage award was the result of passion and prejudice?

6. Did the trial court err by failing to limit intangible losses to $400,000?

7. Did the trial court err in failing to calculate the amount of collateral sources and reduce its award of damages by that amount?

8. Did the trial court err in awarding prejudgment interest on all past damages?

### ANALYSIS

#### I.

*Pecuniary damages*

■ Deutsch argues that pecuniary damages are not recoverable or, in the alternative, that they are limited to $30,000. Deutsch relies on the revisor's version of the Civil Damage Act, (Minn.Stat. § 340A.801, subd. 5 (1986)) which provides for presumed damages. However, the presumed damages provision was an errone-

ous codification of the pecuniary loss provision. *See Kuiawinski v. Palm Garden Bar,* 392 N.W.2d 899, 902 (Minn.Ct.App. 1986). The legislature has since corrected the statute by repealing the presumed damages provision (subd. 5) and reenacting the clause which explicitly allows recovery of pecuniary damages. *See* 1987 Minn.Laws, ch. 152, art. 2, § 3 and 5. Thus, the trial court did not err in allowing recovery for pecuniary damages in excess of $30,000.

## II.

### Obvious intoxication

We will set aside an answer to a special verdict question only when it is "perverse and palpably contrary to the evidence * * *, and only if no reasonable mind could find as did the jury." *Hauenstein v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn.1984) (citation omitted).

■ Minn.Stat. § 340A.502 (1986) prohibits the sale of alcoholic beverages "for the use of an obviously intoxicated person." The standard for determining whether a person is obviously intoxicated is whether exercising reasonable powers of observation, one sees or should see that the buyer is intoxicated. *Strand v. Village of Watson,* 245 Minn. 414, 422, 72 N.W.2d 609, 615 (1955).

■ In the instant case, Welker's blood alcohol level was .27 one hour after the accident. He consumed three beers in one and one-half hours before going to Bob's Tavern, and spent one and one-half hours at the bar consuming beer before driving his car. There is some dispute over the total amount of beer consumed, but the evidence taken in the light most favorable to appellants shows that Welker consumed at least 8–10 beers, and there is reasonable evidence to support a finding of at least 5–6 more. Shortly after the accident Trooper Michael Jurgess arrived on the scene and after observing Welker formed the opinion that he was obviously intoxicated. Toxicologist, Dr. Jensen, called by plaintiff at trial, testified that based on Welker's blood alcohol content, he would have shown signs of obvious intoxication at Bob's Tavern.

Given the deference accorded a jury verdict on disputed facts, the record is sufficient to support the jury's determination that Welker was sold intoxicating liquor while he was in a state of obvious intoxication at Bob's Tavern. The trial court properly sustained the jury's findings.

## III.

### Jury instruction

■ Appellants argue that the trial court failed to instruct the jury on when future damages would begin to accrue. The Minnesota Supreme Court in *Bianchi v. Nordby,* 409 N.W.2d 835 (Minn.1987) set forth the standard for jury instructions:

> What is required of jury instructions 'is that the charge as a whole convey a clear and correct understanding of the law of the case. * * * Considerable latitude must be allowed the trial court in the language used so long as the substance of the law is correctly stated.' *Barnes v. Northwest Airlines,* 233 Minn. 410, 421, 47 N.W.2d 180, 187 (1951).

*Id.* at 839. Absent evidence of uneven accrual of damages, a special verdict form which requires only a determination of the total future damages and the years over which they will be sustained is appropriate. *Id.* In *Bianchi,* the court upheld a special verdict form which asked only for a single dollar amount and did not require a breakdown of the damages into years. *Id.* at 840.

In the present case, while some evidence exists indicating that Mrs. Jewett may not have returned to work for several years, there is also evidence which indicates her capacity to immediately return to work in the event her husband is again laid off. In any event, future damages are not limited to Mrs. Jewett's potential financial contributions.

We find the evidence insufficient to show that future damages would be unevenly incurred. The trial court did not err in refusing to instruct the jury to indicate when future damages would begin to occur

or to itemize future damages on a yearly basis. As in *Bianchi*, the trial court instructed the jury to find total damages as well as the number of years over which the damages would be incurred.

## IV.

### *Future damages discount*

■ The discount statute, Minn.Stat. § 604.07 (1986) was repealed effective April 13, 1988 for all cases pending or brought on or after that date. 1988 Minn. Laws. ch. 503, §§ 5 and 6. We determined in *Olsen v. Special School District No. 1*, 427 N.W.2d 707 (Minn.Ct.App.1988) that a case on appeal as of April 13, 1988 is "pending" within the meaning of the statute. *Id.* at 713. Since the appeal in this case was filed on April 4, 1988, the case is pending, and, therefore the repeal of Minn. Stat. § 604.07 applies retroactively to the present case.

We reject respondents' argument that the effect of the repeal is to prohibit all discounting of future damages. On remand, the trial court may allow expert testimony concerning a suitable discount rate and instruct the jury on discounting in accordance with the law in effect prior to the passage of section 604.07. *See Olsen*, 427 N.W.2d at 715.

## V.

### *Passion and prejudice*

The decision whether to grant a new trial due to improper argument by counsel rests almost entirely within the discretion of the trial court and should not be reversed on appeal absent a clear abuse of discretion. *Ahrenholz v. Hennepin County*, 295 N.W.2d 645, 649 (Minn.1980); *Connolly v. Nicollet Hotel*, 258 Minn. 405, 407, 104 N.W.2d 721, 724 (1960).

■ When a trial court gives a curative instruction after an objection is made to improper arguments, a new trial should not be granted unless the misconduct is extremely prejudicial. *Hake v. Soo Line Railway Co.*, 258 N.W.2d 576, 582 (Minn.

1977); *Bisbee v. Ruppert*, 306 Minn. 39, 47, 235 N.W.2d 364, 370 (1975).

■ In denying a new trial, the trial court stated "counsel's request that the jury 'send a message' and 'set a bench mark' by its verdict was an obvious appeal to passion and prejudice." The trial court concluded, however, that while admittedly improper, counsel's statement "did not result in clear prejudice to opposing counsel or a miscarriage of justice." The trial court further gave a proper curative instruction.

The court also denied a new trial on the grounds that comments concerning a criminal charge arising from the accident against Welker were prejudicial. The trial court instructed the jury to "completely disregard the existence or disposition of any criminal proceedings and not let that enter or affect [them] in any way as to [their] verdict in this matter." We find that this was a proper curative instruction.

## VI.

### *Intangible losses*

■ Welker argues the trial court erred by failing to limit the jury award for intangible losses to $400,000. Welker suggests that intangible and pecuniary losses are the same thing, and argues that the amount awarded for pecuniary loss should be reduced to $400,000 pursuant to Minn.Stat. § 549.24 (1986).

We disagree. The trial court only instructed the jury to consider the counsel, guidance and aid which the decedent would have given the next of kin. We conclude the jury award of $935,000 constitutes only pecuniary losses. Pecuniary losses are not subject to the $400,000 cap set forth in Minn.Stat. § 549.24 (1986).

## VII.

### *Collateral sources*

■ Minn.Stat. § 548.36, subd. 1 (1986) defines collateral sources in relevant part as follows:

"[C]ollateral sources" means payments related to the injury or disability in ques-

tion made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict, by or pursuant to: * * *

(2) health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage; except life insurance benefits available to the plaintiff, * * *, payments made pursuant to the United States Social Security Act, or pension payments * * *.

Subdivision 2 provides:

In a civil action, whether based on contract or tort, when liability is admitted or is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine: (1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses.

Minn.Stat. § 548.36, subd. 2 (1986). The court must reduce the award by the amount determined in subdivision 2. Minn. Stat. § 548.36, subd. 3 (1986).

Both parties moved for a determination of collateral sources. The record fails to indicate whether the trial court determined the collateral source amounts. The trial court should have made this determination. If we had not remanded this case for a new trial on damages, we would remand for a determination of collateral sources.

## VIII.

### Prejudgment interest

Minn.Stat. § 549.09 (1986) provides for interest on verdicts and judgments as follows:

Subdivision 1. Rate (a) When the judgment is for the recovery of money, including a judgment for the recovery of taxes, interest from the time of the verdict or report until judgment is finally entered shall be computed by the court administrator as provided in clause (c) and added to the judgment. (b) * * * Except as otherwise provided by contract or allowed by law, preverdict or prereport interest shall not be awarded on * * * judgments for future damages.

Welker argues that prejudgment interest was erroneously calculated on damages which were subject to reduction of collateral sources. We agree. According to the June 20, 1987 order for judgment, the trial court awarded prejudgment interest on all past damages. The proper method of calculating prejudgment interest is to first reduce the award by the amount of the collateral sources.

## DECISION

We affirm the findings of obvious intoxication, and find no abuse of discretion in the court's denial of the motion for a new trial. While we do not find the verdict based on passion or prejudice, we reverse and remand for a new trial on the issue of damages in light of the repeal of Minn.Stat. § 604.07.

Affirmed in part, reversed in part and remanded.