Amy Elizabeth MAY, Respondent,

v.

Charles Frank STRECKER, et al., Respondents (C8-89-1540, C5-89-1611), Appellants (C2-89-2019),

E.J.'s, Inc., Appellant (C8-89-1540, C5-89-1611), Respondent (C2-89-2019).

Nos. C8-89-1540, C5-89-1611, C2-89-2019.

Court of Appeals of Minnesota.

April 3, 1990.

551

John A. Warchol, Robert J. Hajek, Warchol, Berndt & Hajek, Minneapolis, for Amy Elizabeth May.

Kenneth P. Gleason, Victor E. Lund, Mahoney, Dougherty & Mahoney, Minneapolis, for respondents (C8–89–1540, C5–89–1611), appellants (C2–89–2019).

Peter E. Lind, Foster, Waldeck & Lind, Ltd., Minneapolis, for appellant (C8–89–1540, C5–89–1611), respondent (C2–89–2019).

Considered and decided by HUSPENI, P.J., and SCHUMACHER and NORTON, JJ.

## OPINION

HUSPENI, Judge.

The automobile in which respondent Amy May was a passenger was rear-ended by an automobile driven by respondent Charles Strecker who earlier had been drinking at appellant E.J.'s, Inc. bar. The action arising out of this incident was tried to a jury which returned a verdict finding E.J.'s 25% negligent and Charles Strecker 75% negligent. Amy May was awarded $445,227 in damages. E.J.'s motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial was denied and judgment was entered in accordance with the jury verdict. Insurers for Strecker and E.J.'s tendered their policy limits.

E.J.'s appeals from the denial of a new trial and the entry of judgment; Strecker from the entry of judgment. Amy May moves this court to dismiss the appeal or limit the issues on the grounds that appellants, by tendering part of the judgment, forfeited their right to appeal. We affirm on the merits of all issues appealed.

## FACTS

On October 23, 1985, between 2:00 p.m. and 6:00 p.m., Charles Strecker sat drinking beer at E.J.'s bar in East Bethel, Minnesota. While on Hanson Boulevard in Coon Rapids on his way home, Strecker rear-ended a vehicle being driven by Carole May, who had stopped to make a left-hand turn. Carole May's daughters, Amy and her sister, were in the back seat of the May vehicle.

Off-duty Officer Campion was approaching the intersection when the accident occurred. He stopped at the scene to render assistance until an on-duty officer arrived. Amy was taken to the hospital by ambulance.

After the accident Carole spoke with attorney Robert Hynes to find out how she should go about making claims to receive insurance benefits. Both Hynes and Carole testified at the post-trial motion hearing that the possibility of a dram shop action was not discussed.

Amy received ongoing treatment for injuries allegedly caused by the accident. Dr. John MacDonald, a child neurologist, treated Amy and referred her to Dr. Susan Storti, a licensed consulting psychologist specializing in learning and language disorders. Upon hearing of the circumstances surrounding Amy's condition, Dr. Storti suggested to Carole that she might have a cause of action against the dram shop. Dr. Storti referred Carole to attorney Robert Hajek, a retainer agreement between the two was entered, and Hajek, acting on behalf of Amy, initiated action against Strecker and E.J.'s.

At trial, Strecker testified that he did not believe he exhibited signs of intoxication while he was at E.J.'s. Officer Haase testified, over the objection of counsel, that based upon Haase's experience, Strecker showed signs of being obviously intoxicated at the scene of the accident. Also over the objection of counsel, Dr. Jensen, a toxicologist, testified that based on the results of Strecker's blood/alcohol test, it was highly probable that Strecker would have been showing signs of intoxication while at E.J.'s.

E.J.'s presented the rebuttal testimony of Don Neuenfeldt on the probability of Strecker's showing signs of obvious intoxication, and sought to admit into evidence Strecker's two prior DWI's to help support Neuenfeldt's opinion that Strecker was an experienced drinker. The trial court ruled that the prior DWI's were inadmissible.

Over objection, Amy presented testimony through Alden Bjorklund on loss of earning capacity. (E.J.'s alleged that since Amy was only 14 years old any opinion as to her future earning capacity would be speculative.) In addition, Dr. Storti testified as to the severity of Amy's learning disabilities

and the course which further treatment should take.

The trial court denied E.J.'s request to submit to the jury the question of whether Carole May entered into an attorney/client relationship with Hynes.

Upon return of the jury verdict, E.J.'s moved the court for JNOV or, in the alternative, a new trial, and challenged the constitutionality of Minn.Stat. § 604.02 (1984). Strecker made no post-trial motions. At the post-trial hearing the court, in an effort to determine if notice had properly been given pursuant to Minn.Stat. § 340A.802, subds. 1, 2 (Supp.1985), heard testimony concerning when Carole May entered into an attorney/client relationship with regard to Amy's dram shop claim.

Hajek's partner appeared in Hajek's stead at the motion hearing, after which the partner told E.J.'s counsel that Hajek and Dr. Storti were married. E.J.'s counsel then cited to the court as further grounds for a new trial Hajek's failure to disclose his marriage to his expert witness.

## ISSUES

1. Did the trial court err in failing to submit to the jury the issue of whether or not Carole May had entered into an attorney/client relationship for the purposes of Minn.Stat. § 340A.802, subds. 1, 2 (Supp. 1985) or in its determination of when the attorney/client relationship arose?

2. Did the trial court abuse its discretion in the admission and exclusion of certain evidence?

3. Is E.J.'s constitutional challenge of Minn.Stat. § 604.02 properly before this court?

4. Did the trial court abuse its discretion in failing to grant a new trial based upon the misconduct of counsel?

5. Was there sufficient evidence to support the jury's damage award?

6. Did the insurers' tender of their policy limits limit the parties' rights in this appeal?

## ANALYSIS

I. *Notice Requirement of Minn.Stat. § 340A.802, subds. 1, 2 (Supp.1985)*

E.J.'s argues that the existence of an attorney/client relationship for the purpose of Minn.Stat. § 340A.802 is a factual issue to be determined by the jury, and that the trial court's failure to submit the question to the jury constitutes an error of law.

Minn.Stat. § 340A.802, subd. 1 provides that:

A person who claims damages and a person or insurer who claims contribution or indemnity from a licensed retailer of alcoholic beverages or municipal liquor store for or because of an injury within the scope of section 340A.801 must give a written notice to the licensee or municipality * * *.

Subdivision 2 provides that where a claim for damages is made, "the notice must be served by the claimant's attorney within 120 days of the date of entering an attorney-client relationship with the person in regard to the claim." Minn.Stat. § 340A.802, subd. 2. Further, no action for damages may be maintained unless the notice has been given. *Id.* The notice requirement of Minn.Stat. § 340A.802, subd. 2, is a condition precedent to a civil damage action. *Donahue v. West Duluth Lodge No. 1478 of the Loyal Order of Moose,* 308 Minn. 284, 286, 241 N.W.2d 812, 814 (1976).

In *Olander v. Sperry and Hutchinson Company,* 293 Minn. 162, 197 N.W.2d 438 (1972), the issue before the court was whether plaintiff served defendant with sufficient notice pursuant to Minn.Stat. § 466.05 (1970). The statute at that time required that notice of a claim for damages from a municipality be served within 30 days after the injury. Minn.Stat. § 466.05. The statute also provided that "No action shall therefor be maintained unless such notice has been given * * *." *Id.* The *Olander* court held that "the determination of the sufficiency of the notice is for the trial court as a jurisdictional matter to be disposed of before the commencement of

trial." *Olander,* 293 Minn. at 171, 197 N.W.2d at 443.

■ We find the *Olander* analysis persuasive. Since the fulfillment of the notice requirements of Minn.Stat. § 340A.802 is a condition precedent to the maintenance of a cause of action, we believe it would be a waste of resources to conduct a complete jury trial only to have the jury determine that the plaintiff could not maintain the cause of action because the notice provisions of the statute had not been timely met. The determination of whether the notice provisions of Minn.Stat. § 340A.802, subd. 2 have been complied with is a jurisdictional matter to be disposed of by the court prior to the commencement of trial.

■ We affirm also the trial court's determination that the notice required under Minn.Stat. § 340A.802 was given within the time prescribed. The record supports the trial court's conclusion that the attorney/client relationship between Carole May and Hynes related to recovery of insurance benefits, not a dram shop action.

## II. *Evidentiary Issues*

■ E.J.'s motion for new trial alleges errors in the admission and in the exclusion of evidence, either of which actions may support a new trial motion. *See Glood v. Gundlach,* 303 Minn. 447, 448, 228 N.W.2d 566, 567 (1975). A ruling on admissibility of evidence will be reversed only if it is determined that the trial court abused its discretion and that the abuse of discretion resulted in prejudice to the objecting party. *Benson v. Johnson,* 392 N.W.2d 890, 894 (Minn.Ct.App.1986).

### A. *Testimony of Alden Bjorklund*

■ Bjorklund presented expert testimony on Amy's loss of future earning capacity, testimony which E.J.'s argues was speculative and therefore erroneously admitted.

Minn.R.Evid. 702 (1988) provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"Employability, wage rates, training and the like are not within common knowledge and experience of a lay juror, and the admission of testimony on these subjects was within the discretion of the trial court judge." *Jones v. Fleischhacker,* 325 N.W.2d 633, 640 (Minn.1982).

Here, Bjorklund reviewed Amy's medical records, school records and statistical data from the United States Department of Labor, and rendered an opinion based upon fact. We find no abuse of discretion by the trial court in admitting this testimony.

### B. *Testimony of Dr. Jensen*

■ E.J.'s argues that the testimony of Dr. Jensen regarding Strecker's obvious intoxication was inadmissible because it did nothing to assist the trier of fact. E.J.'s also asserts that it takes determination of the ultimate issue away from the jury.

As previously noted, the admission of expert testimony is governed by the Minnesota Rules of Evidence. Expert testimony is admissible when it assists the trier of fact. Minn.R.Evid. 702.

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Minn.R.Evid. 704 (1988).

In *Jewett v. Deutsch,* 437 N.W.2d 717, 720 (Minn.Ct.App.1989), this court sustained a jury's finding that a dram shop had violated Minn.Stat. § 340A.502 (1986) by selling liquor to an obviously intoxicated individual. The *Jewett* court noted as support for the jury's finding that the individual's blood alcohol level was .27 one hour after the accident, that the officer at the accident scene believed the individual to be obviously intoxicated, and that Dr. Jensen testified that based on the blood alcohol content the individual would have shown signs of obvious intoxication. *Id.*

Here, as appears to have been the case in *Jewett,* there was no testimony of eye-

witnesses as to Strecker's obvious intoxication in the bar. Therefore, Dr. Jensen's testimony provided the jury with some assistance in determining whether or not Strecker would have shown obvious signs of intoxication, and thus was not erroneously admitted.

### C. *Testimony of Officer Haase*

E.J.'s contends that Officer Haase's testimony that Strecker's intoxication was a major contributing factor in the collision was inadmissible. E.J.'s argues Haase's testimony lacked the foundation required by Minn.R.Evid. 701, and also asserts that the testimony is impermissible as a combination of law and fact excluded by Minn.R. Evid. 704.

■ E.J.'s fails to argue with any specificity how the testimony is in the nature of law, not fact. Causation is normally a factual determination. The testimony does not violate Minn.R.Evid. 704 which excludes testimony involving legal analysis. *See* Minn.R.Evid. 704 Comments.

■ Police officers can qualify as experts to render opinions in automobile accident cases. *See Beckman v. Schroeder,* 224 Minn. 370, 28 N.W.2d 629 (1947) (deputy sheriff who had investigated 50 to 75 automobile accidents and patrolman serving eight years could render expert opinion); *Hueper v. Goodrich,* 263 N.W.2d 408 (Minn.1978) (practical experience in field of accident investigation qualified state trooper to testify); *Matter of the Welfare of M.B.W.,* 364 N.W.2d 491 (Minn.Ct.App. 1985) (testimony of deputy sheriff regarding experience, training in accident reconstruction and what he officially observed at the scene laid foundation for opinion regarding point of impact). Haase, the officer who investigated the accident, is a 21–year veteran of the force, has taken two 40–hour classes on traffic accident investigation, and has investigated numerous rear-end traffic accidents. The trial court did not abuse its discretion in allowing him to testify that in his opinion Strecker's intoxication was a major contributing factor.

### D. *Two Prior DWI Charges*

■ E.J.'s argues that the trial court's reliance on Minn.Stat. § 169.94, subd. 1 (1988) to exclude evidence of Strecker's two prior DWI convictions was an abuse of discretion. We disagree.

Minn.Stat. § 169.94, subd. 1, provides: No record of the conviction of any person for any violation of this chapter shall be admissible as evidence in any court in any civil action.

There is no exception to this statute. The trial court did not abuse its discretion by refusing to admit evidence of Strecker's prior DWI's.

### III. *Constitutionality of Minn.Stat. § 604.02 (1984)*

Minn.Stat. § 604.02 provides for the apportionment of damages and states that "when two or more persons are jointly liable * * * each is jointly and severally liable for the whole award." E.J.'s challenges the constitutionality of this provision on grounds of denial of both equal protection and due process, and argues that E.J.'s will be unfairly aggrieved if and when Strecker is unable to pay his portion of the judgment.

■ To have standing to raise a constitutional challenge, the challenger must suffer a direct and personal harm from the alleged denial of a constitutional right. *City of Minneapolis v. Wurtele,* 291 N.W.2d 386, 393 (Minn.1980). In *Rambaum v. Swisher,* 423 N.W.2d 68 (Minn.Ct. App.1988) this court was confronted with a constitutional challenge to Minn.Stat. § 604.02, subd. 1 (1986) made by a joint tortfeasor whose fear was that the other tortfeasor would be declared insolvent. *Id.* at 73. The *Rambaum* court held that absent a showing that the tortfeasors stand "in the relation of insolvent and solvent judgment debtors or that the statute has operated or is about to operate" to the challenger's detriment, there exists no standing. *Id.*

■ Here, E.J.'s points to an admission by Strecker's counsel, made during a discussion of offers for judgment, to the ef-

fect that Strecker's contribution would "probably" not exceed the policy limits. No motion for contribution has been brought. There is nothing in the record which indicates the Streckers' inability to pay their entire portion of the judgment. This issue will be ripe for review if an attempt is made to enforce the entire judgment against E.J.'s, if E.J.'s moves for contribution, and if a record is made in the trial court regarding the Streckers' inability to pay.

There is no merit in E.J.'s argument that this situation is capable of repetition yet evades review and therefore falls under the exception enunciated in *U.S. v. New York Telephone Co.*, 434 U.S. 159, 165 n. 6, 98 S.Ct. 364, 368 n. 6, 54 L.Ed.2d 376 (1977). This issue does not evade review. It is simply not yet ripe. E.J.'s lacks standing at this time to bring this constitutional challenge.

### IV. *Failure to Disclose Impeachment Evidence*

■■■■ E.J.'s asserts that the failure of Amy May's counsel to disclose his marriage to Amy's expert witness constitutes grounds for a new trial. The only possible use which E.J.'s could have made of knowledge of the marriage relationship would be for impeachment of Dr. Storti's testimony. New evidence that is merely impeaching is not sufficient to warrant a new trial. *Sigurdson v. Isanti County*, 408 N.W.2d 654 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Aug. 19, 1987). There appears to be no obligation under the rules for an attorney to disclose information which can solely be used for impeachment purposes.

■■■ The fact that this court finds failure to inform of the marriage relationship an insufficient basis upon which to grant a new trial should not be construed as condoning that failure. We note only that a new trial is granted for misconduct of counsel solely to prevent a miscarriage of justice, not as a disciplinary measure. *Jacobs v. Draper*, 274 Minn. 110, 119, 142 N.W.2d 628, 634 (1966). Action of the trial court on this question will not be reversed on appeal absent a clear abuse of discretion. *Id.* In the absence of any affirmative duty to disclose, the trial court did not abuse its discretion in denying E.J.'s motion for a new trial.

### V. *Sufficiency of the Evidence*

■■■ Strecker appeals only from the entry of judgment, and argues that the evidence at trial is insufficient to support the jury's award of damages.

> In reviewing a jury verdict on appeal, the court must consider the evidence in the light most favorable to the prevailing party, and the verdict must be sustained unless it is manifestly and palpably contrary to the evidence. * * * If the answers to special verdict questions can be reconciled on any theory, the verdict will not be disturbed.

*Insurance Company of North America v. Federal Pacific Electric Co.*, 363 N.W.2d 884, 886 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 31, 1985) (citations omitted).

The record is devoid of any objective findings that Amy suffered a head injury. However, the unrebutted testimony of the neurologist was that, but for the accident, Amy would not have the problems she currently suffers. In addition, Dr. MacDonald testified that his was a diagnosis by exclusion; that in the absence of any history which would suggest otherwise, Amy's injuries would not have existed but for the accident. Dr. Storti, who testified primarily as to the nature and extent of Amy's learning disabilities, also expressed her opinion that those disabilities were the result of injuries sustained by the accident, and that "in this type of injury, you may not be able to see the injury, but there is still damage to the brain."

There was no expert testimony presented to contradict that of respondent's witnesses. We conclude that the jury's verdict is not manifestly and palpably contrary to the evidence.

### VI. *Limitation of Issues on Appeal*

■■■ The insurers of both E.J.'s and Strecker tendered their policy limits directly to Amy May, apparently making the unconditional tender to avoid being liable

for continuing interest on the entire judgment. *See Balder v. Haley*, 441 N.W.2d 539 (Minn.Ct.App.1989). Amy argues that partial payment of the judgment by appellants constituted waiver and seeks to have this appeal dismissed or to bar any challenge to liability. Appellants argue that in any event Amy could have collected these amounts by executing on the trial court judgment, rendering the payment then neither voluntary nor unconditional.

In *Bartel v. New Haven Township*, 323 N.W.2d 806, 810 (Minn.1982) the supreme court held that the voluntary payment of a judgment without reserving the right to appeal constitutes a waiver of the appeal rights. In *Bartel* the township was found 50% negligent and a judgment of $36,438.33 was entered against it. The township paid the judgment, received a partial satisfaction of judgment, and filed the satisfaction with the trial court. *Id.*

We find this case to be distinguishable from *Bartel*. There, the township was a party to the action and had direct control over whether payment on the judgment would be tendered. Here, the parties have no control over the insurers who tendered payment. In addition, the parties themselves remain liable for the remainder of the judgment. No satisfaction of judgment was received. It would be unfair in this situation to limit the parties' right to appeal because their insurers sought to limit the insurers' liability. The tender of the policy limits by the insurers is no indication of the parties' acceptance of the judgment. When parties remain personally liable for a portion of the judgment, their rights on appeal should not be affected by their insurers' tender of part of the judgment.

## DECISION

Affirmed.